## HENRY COULTER v. THE STATE.

### No. 2521. Decided June 18, 1913.

### Rehearing denied October 29, 1913.

**1.—Murder—Manslaughter—Evidence.**

Where the bills of exception showed that no objection was made to the testimony objected to, or was elicited by the defendant, there was no error.

**2.—Same—Charge of Court—Principals.**

Where the court's charge on principals correctly applied the law, there was no error.

**3.—Same—Self-Defense—Charge of Court—Defendant's Standpoint.**

Where the court, in his charge on self-defense, applied the law solely as to what the jury believed was the stanpoint of defendant's codefendant, and thus permitted them to judge the defendant's act and conduct by the belief of and appearances to his codefendant in acting in self-defense, the same was reversible error.

**4.—Same—Charge of Court—Defense of Another.**

Where, upon trial of murder and a conviction of manslaughter, the evidence raised the issue that defendant acted in the defense of his brother or father, the court should have submitted this issue.

**5.—Same—Standpoint of Defendant—Self-Defense.**

In a case where self-defense is an issue, the jury should always be instructed as to the defendant's rights, viewing the matter from his standpoint, and not the standpoint of another, and where the defendant was indicted with his father and brother for murder, and the court, in his charge on self-defense, applied the law of self-defense solely to the acts and conduct of his brother, the same was error.

**6.—Same—Charge of Court—Self-Defense—Defense of Another.**

Where, upon trial of murder, the evidence tended to show that the deceased fired at the father of defendant and that the brother of defendant acted in defense

of his father when he fired at deceased in presence of defendant, it was error in the court's charge to limit the acts and conduct of said brother to self-defense of himself instead of that of his father.

**7.—Same—Charge of Court—Self-Defense—Case Stated.**

Where, upon trial of murder, and a conviction of manslaughter, the State claimed that the defendant acted with his father and brother in firing at the deceased, and the defendant contended that his brother fired two shots at some fowls and that then deceased began to curse, drew his gun and fired at the father and brother of defendant, and that defendant took no part in the shooting or difficulty, and the court's charge on self-defense did not fairly and succinctly present that issue, the same was reversible error.

**8.—Same—Facts Stated in Opinion.**

Where, upon trial for rehearing, the State contended that the court did not correctly recite the facts, but the record bore out the court in doing so, there was no error.

**9.—Same—Self-Defense—Defendant's Standpoint.**

Where, upon trial of murder and a conviction of manslaughter, defendant was indicted with his father and brother, and no conspiracy was shown and defendant insisted that he was not acting with them, which was supported by evidence, it was reversible error to limit defendant's right to act in self-defense if it reasonably appeared to his brother that deceased was about to shoot him, instead of as it appeared to defendant.

Appeal from the District Court of San Augustine. Tried below before the Hon. A. E. Davis.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Wm. McDonald* and *King & King* and *D. M. Short & Sons,* for appellant.—On question of intent of codefendant: Parnell v. State, 50 Texas Crim. Rep., 419; Griffin v. State, 57 id., 280; Butler v. State, 33 id., 232; Glover v. State, 33 id., 224; Hargrove v. State, 33 id., 431; Guffee v. State, 8 Texas Crim. App., 187; Munson v. State, 63 S. W. Rep., 647.

On question of defense of another: Foster v. State, 8 Texas Crim. App., 248; Snell v. State, 29 id., 236; Chambers v. State, 46 Texas Crim. Rep., 61; Voight v. State, 53 id., 268; Johnson v. State, 61 Texas Crim. Rep., 24, 132 S. W. Rep., 804.

On question of applying the law to the facts of the case: Oldham v. State, 63 Texas Crim. Rep., 527; Terry v. State, 62 id., 73; Condron v. State, 62 id., 485; Sanchez v. State, 75 Texas Crim. Rep., 24, 156 S. W. Rep., 218.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was prosecuted, charged with murder, and when tried convicted of manslaughter, and his punishment assessed at two years confinement in the penitentiary.

The evidence in this case would show that deceased, A. C. Lynch,

and Hinson Coulter were brothers-in-law. That deceased rented four or five acres of land from Hinson Coulter and erected a mill thereon. The pond, from which the water for the mill was secured, was inside of Hinson Coulter's pasture, an underground pipe making the connection. It appears that deceased cut a gate in the fence of Hinson Coulter's pasture, and when Coulter learned of it he nailed it up, and then went to the mill and so informed deceased. Words ensued, the exact language being used being conflicting. Any way Coulter went to his home some four hundred yards distant. It appears after he left, deceased fired his pistol three times, but not at any person. Deceased and one of his employes, McBride, went near the house of Coulter after an oil pump, and while they were there a pistol was fired twice in the lot of Mr. Coulter. The testimony of the State would then show a third shot was fired from the inside of the lot, knocking up the dirt near the feet of deceased; that he then cursed those in the lot for G—d d—n son of b——s and dared them to come out and fight it out, at this time drawing his pistol, when the State's witnesses say two more shots were fired from the lot, and deceased fell with a bullet in his brain. The State's witnesses testify positively that deceased fired no shot, and did not draw any weapon until after the third shot was fired. After the shooting was over a pistol was taken from Raymond Coulter, with only one empty shell, showing it to have been fired but once, and all the witnesses testify that he fired at least once, and the defendant's witnesses would have that one inflicting the fatal wound. Two of the State's witnesses, Judge Green and John White, state that after the shooting appellant, Henry Coulter, came up to the fence with a pistol in his hand and made a remark to deceased's son, Robert.

The defendant's witnesses would show that after the difficulty at the gin, Hinson Coulter came to the house, and then he, his three sons, Henry, Raymond and Amos, and Elisha War started to the field to work. They say only one of them had a pistol; Raymond Coulter had a pistol. That when he got in the lot he fired twice at some guineas; that he then reloaded his pistol. There is no contention that those two shots were fired at deceased. The defendant's witnesses say that when the two shots were fired in the lot, deceased began to curse, drew his pistol and fired, shooting between Hinson Coulter and his son, Raymond; that Hinson Coulter jumped behind the barn, and Raymond Coulter behind a tree. That Raymond Coulter and deceased both fired then about the same time and deceased fell. When deceased's pistol was secured it would indicate two shots had been fired out.

This shows the contention of the parties, the State's being that after the trouble at the gin, Hinson Coulter had said he would return; that he and all his boys did go towards the gin, and that deceased fired no shot but that all five of the shots then fired were fired by those inside the lot—the Coulters. The appellant's contention is that they had no thought of going towards deceased, but were going to the field to work; that Raymond fired two shots at the fowls, when deceased began

to curse, drew a gun and fired at Hinson Coulter and his son Raymond. Further contending that appellant had no pistol; did not shoot, and was in a position where he could not see the difficulty.

There are three bills of exception in the record to the introduction of certain testimony. As to the first two, the court states, in approving them, that no objection was made to the testimony when elicited, and no motion made to exclude it. As to the third, the court states the testimony was elicited by defendant. Under such circumstances, of course, these bills present no error.

As appellant was found guilty of only manslaughter, it is only necessary to discuss the question, did the court properly present that issue and the issue of self-defense? We think the court correctly applied the law of principals to the case, and the criticisms of that portion of the charge are without merit. However, the court instructed the jury:

"If from the evidence, you believe beyond a reasonable doubt that Raymond Coulter killed A. C. Lynch, but you further believe, or if you have a reasonable doubt as to whether or not such is a fact, that at the time of so doing, and before Raymond Coulter made any effort to shoot A. C. Lynch, if he did so make any effort, that A. C. Lynch had made, or was about to make, an attack on Raymond Coulter as viewed from his standpoint which from the manner and character of it caused Raymond Coulter to have a reasonable expectation or fear of death or bodily injury, and that acting under such reasonable expectation or fear of death or bodily injury, Raymond Coulter killed A. C. Lynch, then you will acquit the defendant, Henry Coulter; and if A. C. Lynch was armed, and was making, or was about to make, an attack on Raymond Coulter, and Raymond Coulter believed at the time he shot (if he did shoot) that A. C. Lynch was about to attack him, and if the weapon used by Lynch, and the manner of its use, was such as was reasonably calculated to produce death or serious bodily harm, then the law presumes he intended to murder or inflict bodily injury upon Raymond Coulter."

Thus it is seen the court instructed the jury, and applied the law, solely as to what they thought Raymond Coulter believed, and how it appeared to him. Appellant's acts and conduct could not and should not be judged by the belief of and appearances to Raymond Coulter, but if it reasonably appeared to him, appellant, that deceased was about to kill Raymond Coulter, or his father, Hinson Coulter, and under such circumstances he acted, he would be entitled to an acquittal irrespective of what Raymond Coulter may have thought about the matter. While it is true, if Raymond Coulter was justified in his acts, appellant would be entitled to an acquittal, yet even though Raymond Coulter should be held to be not justifiable, yet if it reasonably appeared to appellant that his brother or father was in danger of death or serious bodily injury, and acting under such belief, he so conducted himself as to make himself a principal in the transaction, yet he would be entitled to have the jury pass on the question as to whether under the facts

and circumstances it so reasonably appeared to him, and he should not be held bound by how the jury might conclude it reasonably appeared to his brother Raymond. We and each of us are liable only for our own acts, and in a case where self-defense is an issue, the jury should always be instructed as to his rights, viewing the matter from his standpoint and not the standpoint of another. The evidence is sharply conflicting as to who fired the first shot at the lot, and if the jury should believe that Raymond did fire the first shot, but appellant did not see him do so and did not know that fact as he testifies, if he then saw deceased with a gun in his hands, which all the witnesses say he then had, and he under such circumstances did in fact draw a pistol and shoot, as is contended by the State, he would be entitled to a charge on that theory of the case. If Henry Coulter took any part in the shooting or difficulty, it is shown by circumstantial evidence, and under such circumstances the jury should have been told in addition to the above charge that if he did participate in the difficulty, that at the time he did so it reasonably appeared to him that his brother or father was in danger and acting under such belief, he acted in such a manner as to become a principal in the transaction, he would not be guilty.

Again the court instructed the jury: "If you believe beyond a reasonable doubt that Raymond Coulter, with intent to kill A. C. Lynch, or Henry Coulter acting as principal, drew his pistol and attempted to shoot A. C. Lynch, or did shoot at A. C. Lynch before said A. C. Lynch made any effort to shoot the said Raymond Coulter, as viewed from his standpoint, and you further believe beyond a reasonable doubt in said altercation Raymond Coulter shot and killed A. C. Lynch, and you further believe beyond a reasonable doubt that the defendant Henry Coulter, knowing these facts, acted with Raymond Coulter in such killing, as a principal, as that term has heretofore been defined to you, then you will find the defendant, Henry Coulter, of some grade of homicide as you may determine from the charge hereinbefore given, notwithstanding that you may believe from the evidence that at the time Raymond Coulter fired the shot that killed A. C. Lynch, Lynch was making an effort to shoot said Raymond Coulter." The evidence in this case would show that the fight was between deceased and Hinson Coulter, the father of the two boys. Raymond Coulter was not present and did not participate therein. The evidence offered in behalf of appellant would show that when the two shots were fired at the guineas, deceased drew a pistol, cursed and fired the ball passing between Raymond Coulter and his father, Hinson Coulter. If Raymond Coulter knew of the difficulty between his father and deceased, and deceased fired the shot as testified to by them, the most natural inference would have been that deceased was shooting at his father and not him. Raymond Coulter had had no difficulty with deceased, while his father had just had an altercation with deceased, and yet this charge requires the jury to find, before appellant would be entitled to an acquittal, that

deceased shot at Raymond Coulter before Raymond Coulter acted.   The jury could not, under the evidence in this case, see why deceased would desire to shoot at or kill Raymond Coulter, and yet, under the evidence, hearing the two shots, they might have arrived at the conclusion that deceased shot at Hinson Coulter, with whom he had just had a serious difficulty.   These charges as given do not present the issues made by the testimony in this case, and because the charge does not fairly and succinctly present that issue, this cause should be reversed and re-manded, and we have indicated sufficiently our view of the law of this case in commenting on these two charges, and it will not be necessary to discuss the other grounds in the motion.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

ON REHEARING.

October 29, 1913.

HARPER, JUDGE.—At the last term of this court this cause was reversed and remanded, and the State has filed a motion for rehearing, contending that we were in error in the following particulars.   First, he says there is no testimony that Lynch, if he shot, shot at any person except Raymond Coulter.   This record does not disclose that Raymond Coulter had had any trouble prior to that date, but it does disclose that on that day appellant's father, also the father of Raymond Coulter, had had a difficulty with Mr. Lynch, and it was the State's contention, Hinson Coulter with his boys, were on the way to the mill to renew the difficulty.   According to the testimony offered in behalf of the defendant, Raymond Coulter had fired twice at some guineas; when deceased Lynch began to curse and shot in the lot where Raymond Coulter, appellant and his father were all situate.   Hinson Coulter, the father, testified:   "Henry and Raymond and Amos and Elisha War all went into the lot together.   I heard Raymond shoot at some guineas there two or three times in his ma's garden.   The lot fence and the garden fence was all one string.   It joins and one string makes both strings of the lot and the garden.   I don't whether it was before Raymond—it must have been just as he shot the last time—I heard somebody cursing in front of the lot towards the big road.   I turned right around and stepped to the wagon tongue, and Raymond was coming up there, and we were nearly side by side, and I saw Arch, and just as we got in full view of him he shot, and it knocked up the dust between mine and Raymond's feet, and I just ducked back."

Henry Coulter, appellant, testified, he had no pistol and did not shoot.   He testified about Raymond shooting at the guineas; he then heard Mr. Lynch cursing and Raymond went in that direction; that pa (Hinson Coulter) went up to the wagon with Raymond, and his father ducked when Lynch shot in the lot the first shot.

Mrs. Evy War testified about hearing the shots in the back of the lot

and deceased, her uncle Arch, then began cursing, saying: "He just grabbed his hat and popped it against his leg and said, 'Come on out here, you G—d d—d cowardly sons of b—s I am out here waiting for you, I am going to kill the last G—d d—n one of you.' He just kept swearing and cursing, and I said to mama, I would make him go to the mill and behave himself, and I holloaed and told Uncle Arch to go on back to the mill and behave himself, and he said, 'You needn't say a G—d d—n word,' and about that time he pulled his pistol and shot.. He shot right straight in the lot, looked to me like, under the shed."

Mrs. Coulter testified to her husband and the others being in the lot, and that Raymond fired at the guineas, when Mr. Lynch commenced cursing and went that way: "He just reached up and grabbed a hold of his hat and slapped it against his hip that way (indicating) and holloaed and told them they needn't be throwing their dares the 'G—d d—n cowardly sons of b—s, come out there he was out there ready for them and waiting for them.' And I ran out to the gate and holloaed and said, 'Arch, my folks ain't bothering you, they are going to the field to work, you go on back to the mill.' And he said that I needn't say a word to him, he aimed to kill every G—d d—n one of them when they come on through that lot. He (Lynch) shot right towards the lot."

Now if as the State contends appellant knew of the difficulty between deceased and his father, and did not know of any trouble between Raymond and deceased, when this shot was fired, would not the natural and only inference he could draw, be that deceased was shooting at his father, the person with whom he had the difficulty; would it not so appear to him, and the State's able counsel are mistaken in asserting that the evidence, and all the evidence, shows that deceased fired the first shot (if he shot) at Raymond Coulter and no other person.

Again, counsel for the State inists we erred in holding that the charge on self-defense was erroneous in limiting appellant's right to act, if it reasonably appeared to *Raymond Coulter* that deceased was about to shoot him, Raymond Coulter, etc. Appellant can not be bound by the way the matter appeared to Raymond Coulter. The charge should have instructed the jury that if it reasonably appeared to him, *Henry Coulter,* that deceased was about to or had made an attack on Raymond Coulter, his father, etc., he would have the right. Every person is to be judged as it may appear to him and not as it may appear to some other person. If he acted with Raymond Coulter in the commission of an offense, of course, he would be bound by the act of Raymond Coulter, but in this case it was an issue as to whether he did anything; but if he did shoot, but at the time it reasonably appeared to him that deceased was about to slay his father or brother, he would be guilty of no offense, although his brother might not have so viewed the matter. If a conspiracy was shown beyond doubt the rule might be different, but in this case appellant earnestly insists he was not acting with Raymond

Coulter, and there is testimony supporting him, making that an issue in the case.

The motion for rehearing is overruled.

*Overruled.*