PETER REYES v. THE STATE.

No. 4481.     Decided May 30, 1917.

Rehearing denied June 29, 1917.

**1.—Receiving Stolen Property—Indictment—Sufficiency of the Evidence.**

Where the indictment is regular and follows the approved form and the statute, in a prosecution for receiving stolen property, the same is sufficient, and the evidence sustaining the conviction, there was no reversible error on that ground.

**2.—Same—Copy of Indictment—Service—Idem Sonans—Statement of Facts.**

Where, upon trial of receiving stolen property, defendant filed a motion to postpone the trial for two days so that he could be properly served with a copy of the indictment, and among other grounds claimed that the name of the person from whom he received the alleged property, as alleged in the indictment, was not the same as the name indorsed on said indictment, and that, therefore, the copy with which he had been served was not a true copy. Held, in as much as the statement of the facts introduced in evidence upon the trial of said motion was not filed in term time, the same can not be considered on appeal, and it must be presumed that the action of the court in overruling the motion was correct. Following Black v. State, 41 Texas Crim. Rep., 185, and other cases. Besides, the said names are idem sonans, and the variation in the spelling thereof did not present reversible error.

**3.—Same—Charge of Court—Idem Sonans—No Variance.**

Where, upon trial of receiving stolen property, the indictment alleged that the name of the party from whom defendant received said property was Espnosa and the proof showed that it was Espinosa, this constituted no variance and the court's charge using the first name, as alleged in the indictment, was idem sonans to the one used in the evidence; besides, there was no testimony as to the orthography of the name, or how it was spelled.

**4.—Same—Charge of Court—Weight of Evidence.**

Where, upon trial of receiving stolen property, the charge of the court properly applied the law to the facts, the same was not on the weight of the testimony, and there was no reversible error.

**5.—Same—Name—Idem Sonans—Spanish Language—Rule Stated.**

Where, upon trial of receiving stolen property, the indictment alleged that the name of the person from whom defendant received said property was Espnosa, and the proof showed that it was Espinosa, and defendant contended the variance was fatal, and that there was no such word as Espnosa in the Spanish language, and introduced testimony to sustain his contention, but there was no testimony that the name alleged in the indictment was that of a Spaniard, or that it was Spanish, or how the name was spelled, there was no error in the court's charge in using the name as spelled in the indictment; besides, the names were idem sonans, as they could be sounded alike without doing violence to the power of the letters used. Following Rowan v. State, 57 Texas Crim. Rep., 625, and other cases. Distinguishing Weitzel v. State, 28 Texas Crim. App., 523.

**6.—Same—Rule Stated—Idem Sonans—Rule Stated.**

The doctrine of idem sonans has been much enlarged by modern decisions to conform to the growing rule, that a variance, to be material, must be such as would mislead a party to his prejudice; and where the appellant could not possibly have been deceived or misled in any way by the way this person's name was spelled or misspelled, there was no reversible error. Following Gentry v. State, 62 Texas Crim. Rep., 500, and other cases.

**7.—Same—Words and Phrases—Judgment.**

Where the appellant contended that the judgment and sentence adjudged him guilty of concealing stolen property, when he was charged with receiving the same, but the record shows that he was convicted as he was indicted, for receiving stolen property, etc., there was no reversible error.

**8.—Same—Accomplice's Testimony—Corroboration—Charge of Court.**

Where, upon trial of receiving stolen property, the conviction depended upon accomplice testimony sufficiently corroborated by other evidence, the conviction was sustained under a proper charge of court, on that branch of the case.

Appeal from the District Court of Gonzales. Tried below before the Hon. M. Kennon.

Appeal from a conviction of receiving stolen property; penalty, two years imprisonment in the State penitentiary.

The opinion states the case.

*W. M. Atkinson* and *W. T. Miller,* for appellant.—On question of idem sonans: Ogden v. Bosse, 86 Texas, 336; Weitzel v. State, 28 Texas Crim. App., 523; Selman v. Orr, 75 Texas, 528; Haney v. State, 2 Texas Crim. App., 504; Shields v. Hunt, 45 Texas, 424; Spoonmore v. State, 25 Texas Crim. App., 359; Garhart v. Britt, 3 Texas App.

Civil Cases, sec. 373; Mosley v. State, 36 Texas Crim. Rep., 579; 29 Cyc., p. 277.

*E. B. Hendricks*, Assistant Attorney General, for the State.—On question of variance of names and copy of indictment: Johnson v. State, 4 Texas Crim. App., 395; White v. State, 32 Texas Crim. Rep., 635; Luster v. State, 63 id., 541.

PRENDERGAST, JUDGE.—Appellant was convicted of receiving stolen property and his punishment assessed at the lowest prescribed by law.

The indictment is regular and follows the approved form and the statute. It alleges that appellant unlawfully and fraudulently received one horse from Modesta Espnosa belonging to Chas. Webber and which had been acquired by said Modesta Espnosa in such manner as that the acquisition thereof came within the meaning of the term theft and that at the time he received it he well knew it had been so acquired.

The evidence was amply sufficient to sustain the conviction. It is unnecessary to recite it.

The indictment was preferred January 10, 1917. The names of the persons upon whose testimony the indictment was found were endorsed thereon, and among them was Modesta Espnosa. The theft of the horse was alleged to have been on August 2, 1916. The case was regularly called for trial on January 25, 1917. Appellant then made a motion to postpone the trial for two days or for such length of time as that he could be properly served with a copy of the indictment two days before the trial. His motion on this subject is very full. The material allegations thereof will be fully stated.

He alleged therein that said indictment was preferred and filed January 10, 1917; that he was arrested thereunder on the next day while at his home twenty miles from the county seat and taken by the officer to the county seat and confined in jail continuously from that time to his trial; that no copy of said indictment had been served upon him or delivered to him and that he had never waived such service or copy; that on August 2, 1916, he had been arrested on a complaint then charging him with theft of a mare, the property of one Krause, and that on August 22d, following, when he had an examining trial before the justice of the peace he was bound over and entered into a bail bond to appear before the grand jury of said county at the January term, following; that the said grand jury did not indict him for that alleged offense; that he had executed no other bail bond nor been on bail at any time except on said charge; that on January 12th L. W. Wright, a constable of a certain precinct of said county, delivered to him an instrument in writing purporting to be a certified copy of the indictment herein and purporting to be certified by the clerk of said court. He attached and made an exhibit to his motion said copy. This copy is a literal copy of the indictment herein with the sole exception that

the name Espnosa has an *i* inserted in it between the letters *p* and *n,* so that said name in the indictment Espnosa is spelled in this copy *Espinosa.* The clerk's certificate to the said copy on its face is regular, full and complete in every particular, certifying that it was a true and correct copy of the original bill of indictment, etc., and concludes: "Given under my hand and official seal at my office in Gonzales, Texas, this 11 day of January, A. D. 1917. T. G. Goss, Clerk, District Court, Gonzales County, Texas." He further alleged that no part of said copy or certificate was written by said clerk, and that the clerk's name thereto was not written by him but that the whole was written by C. P. Chenault, a deputy sheriff of said county, and he was not a deputy for said clerk; that said copy was not attested by the seal of said court and that no seal appeared on it. Then he alleged the sole difference between the original indictment and the said copy served on him, was that the letter *i* was used in spelling the word Espnosa, as shown above. That no copy of said indictment made out or written by the clerk or by his deputy, if any he had, or by anyone else authorized or permitted by law to act for him, had ever been served upon or delivered to appellant. That said copy is the same instrument referred to in the purported sheriff's return ("B. Neighbors, Sheriff, Gonzales County, Texas, by L. W. Wright, Deputy,") among the papers of this cause and endorsed on an instrument purporting to be a precept to serve a copy of the indictment on him, but to which no seal of said court is affixed. That said Wright was not and never was during January, 1917, a deputy of said sheriff, and said return, including the signature thereto, was written and signed by said Chenault and not by said Wright.

All these averments in his motion were mere allegations. They were not evidence at all, but they had to be proven by proper testimony, just like any other allegation had to be proven, and appellant undertook to prove them.

The indictment and all the other papers filed therein were numbered 3847, and properly styled the cause as "The State of Texas v. Peter Reyes." At the time this motion was presented in the lower court, the trial judge heard the evidence then introduced by appellant to support the allegations of his motion, and upon hearing this evidence overruled his motion. The term of court at which this trial occurred adjourned January 29, 1917. Appellant's bill of exceptions presenting this matter and purporting to contain a statement of the evidence introduced and heard by the trial judge at the time he acted on his motion was not filed during term time. Said evidence is in no other way attempted to be shown by this record. His said bill presenting it expressly shows on its face that it was prepared by him in vacation after the said term of court had adjourned and not till February 23d; that it was on that date presented to and acted upon by the trial judge and filed in said court the next day.

It has always been held by this court in an unbroken line of decisions

down to this very date that whenever the trial court hears testimony on any motion of an accused it is essential that such evidence shall be preserved either by bill of exceptions, or a statement of facts on that matter, and that in either event the bill preserving it, or such statement of facts, shall be approved and filed during term time, and that unless it is so preserved and filed in term time this court can not consider the question. And that this court must conclusively presume that the action of the judge in overruling such motion was sustained, or appellant's allegations were not established, by such testimony. Some of these cases will here be collated: Black v. State, 41 Texas Crim. Rep., 185, 53 S. W. Rep., 116; Reinhard v. State, 52 Texas Crim. Rep., 59, 106 S. W. Rep., 128; Jarrett v. State, 55 Texas Crim. Rep., 550, 117 S. W. Rep., 833; Mikel v. State, 43 Texas Crim. Rep., 615, 68 S. W. Rep., 512; Williams v. State, 56 Texas Crim. Rep., 225, 120 S. W. Rep., 421; Probest v. State, 60 Texas Crim. Rep., 608, 133 S. W. Rep., 263; Tarleton v. State, 62 S. W. Rep., 748; Knight v. State, 64 Texas Crim. Rep., 541, 144 S. W. Rep., 967; Bailey v. State, 65 Texas Crim. Rep., 1, 144 S. W. Rep., 996; Graham v. State, 73 Texas Crim. Rep., 28; Etheridge v. State, 74 Texas Crim. Rep., 638; Marshall v. State, 5 Texas Crim. App., 273; Hicks v. State, 75 Texas Crim. Rep., 480; Sorrell v. State, 79 Texas Crim. Rep., 437, 186 S. W. Rep., 338; Sharp v. State, 6 Texas Crim. App., 650. Mr. Branch, in his 1 Ann. P. C., section 598, cites these additional cases on this point, and also some of the above: Sandoloski v. State, 65 Texas Crim. App., 33, 143 S. W. Rep., 155; Treadway v. State, 65 Texas Crim. Rep., 208, 144 S. W. Rep., 658; Washington v. State, 66 Texas Crim. Rep., 360, 147 S. W. Rep., 276; Crowell v. State, 66 Texas Crim. Rep., 537, 148 S. W. Rep., 571; Gotcher v. State, 66 Texas Crim. Rep., 522, 148 S. W. Rep., 574; Clary v. State, 68 Texas Crim. Rep., 290, 150 S. W. Rep., 919; Maxwell v. State, 69 Texas Crim. Rep., 248, 153 S. W. Rep., 324; Bryant v. State, 69 Texas Crim. Rep., 457, 153 S. W. Rep., 1156; Decker v. State, 69 Texas Crim. Rep., 450, 154 S. W. Rep., 566; Vick v. State, 71 Texas Crim. Rep., 50, 159 S. W. Rep., 50; Johnson v. State, 71 Texas Crim. Rep., 520, 160 S. W. Rep., 695; Hoskins v. State, 73 Texas Crim. Rep., 107, 163 S. W. Rep., 426; Dukes v. State, 74 Texas Crim. Rep., 300, 168 S. W. Rep., 96; Hemphill v. State, 75 Texas Crim. Rep., 63, 170 S. W. Rep., 154.

As this point, under the circumstances, can not ·be considered, it is unnecessary to show that by the decisions of this court the variation in spelling the name of Espnosa by inserting the *i* therein and the manner of certifying and service of said copy on appellant would present no reversible error. But on this point see Johnson v. State, 4 Texas Crim. App., 268; Barrett v. State, 9 Texas Crim. App., 33; Hargrove v. State, 51 S. W. Rep., 1124; Luster v. State, 63 Texas Crim. Rep., 541; A. & E. Ann. Cas., 1913D, 1089, and cases there cited in the note, and other authorities of this State.

His bill 6 shows that he objected to the court's charge as follows:

Because it is on the weight of the evidence in that the indictment charges him with receiving said alleged· stolen horse from one "Modesta Espnosa," whereas the evidence only shows and tends to show that said horse was received by him from one "Modesta Espinosa," and the court's charge assumes as a matter of law and fact that said names are idem sonans, whereas under the evidence it is a question for the decision of the jury (under proper instructions from the court) as to whether such names are idem sonans.

As it pertains to the same matter, his tenth bill will be stated and considered also. In that he complains that the court refused to give his special charge, which was in this language:

"If you believe from the evidence that the name of the party alleged to be the person from whom the defendant received the property alleged to have been stolen is different in sound from the name alleged in the indictment, towit, Modesta Espnosa, you will acquit the defendant."

The court in approving bill 6 explained and qualified it by stating: "The person named Modesta Espnosa in the indictment was upon the stand, and he was not asked how he spelled his name; hence, the issue of variance or of idem sonans is not raised." In his qualification and explanation of No. 10 he stated: "There was no evidence in the case as to how Espnosa spells his name, and, therefore, there is nothing upon which to base the requested charge." The court's qualification in each instance was true as shown by the statement of facts and record.

In the charge the court, as is usual, told the jury succinctly that appellant was on trial charged with receiving from Modesta Espnosa one horse which had theretofore been acquired from Chas. Webber by said Espnosa in such manner that the acquisition comes within the definition of theft and that appellant fraudulently received and concealed said horse, then and there well knowing the same to have been acquired by theft, and that appellant had plead not guilty. He then charged as is usual the presumption of innocence of appellant until his guilt was established by legal evidence beyond a reasonable doubt and if they had such doubt of his guilt, to acquit him; also that they were the exclusive judges of the facts proven, weight to be given the evidence and the credibility of the witnesses; then defined theft as prescribed by the statute; and submitted the case to the jury for a finding, as follows:

"If you find from the evidence that the horse mentioned in the indictment had been acquired from the said Webber by Modesta Espnosa in such manner as that the acquisition thereof comes within the above definition of theft, and that thereafter, on or about the 2nd day of August, 1916, in Gonzales County, Texas, the defendant did fraudulently receive .said horse from the said Modesta Espnosa and that when he so received said horse, the defendant knew it had been stolen, you will find the defendant guilty of fraudulently receiving a stolen horse as charged in the indictment, and assess his punishment at con-

finement in the penitentiary for any term not less than two nor more than ten years."

In the next paragraph he told them that the witness Modesta Espnosa was an accomplice and required his testimony to be corroborated as required by the statute, and in a charge which has many times been approved by this court and to which as such no objection was made. It is unnecessary to further state the charge.

The charge was not upon the weight of the testimony, but was just such charge as should have been given and was applicable to the law and the testimony.

It is true appellant introduced a Catholic priest named Eggers, who had lived in Gonzales for a few years and said he was a native of South America and spoke the Spanish language, which was his native language; that generally the Mexicans speak some kind of a Spanish language; that it was not really the Spanish, but generally the basis for the Mexican language was the Spanish. He said: "The word 'Espnosa' does not look like a Spanish name to me." He then told that they had in Spanish the name "Espinosa" and that he *thought* that should be the real spelling of it. He said: "There is no such word as 'Espnosa' in Spanish; it might be in another language." He said the word "Modesta" was a feminine name in Spanish and was never used as the name of a male; that in the Spanish the name of a man finishes in *o* and that the *o* distinguishes the masculine from the feminine, when the word ends in *a*. That ordinarily in conversation the words "Modesta" and "Modesto" could be distinguished, because in the Spanish language they had no half sounds but full sounds and that each letter is fully pronounced. "But sometimes they don't pronounce them quite clear, but it is easy to ask and find out." That the word "Espnosa" had no pronounceable sound in Spanish, because three consonants came together, and that in the Spanish they had no sound like "Espn" and could not say "Esp" either, "because we have no way of pronouncing them in Spanish." That in common parlance the words "Espnosa" and "Espinosa" could not be pronounced alike and he thought they couldn't be pronounced without confusion.

There is no intimation in this case that Modesta Espnosa was a Spaniard or that his name was a Spanish name, and as stated by the judge in his qualification there was no testimony at all in this case as to how said Modesta Espnosa spelled his name. For aught that appears he spelled his name precisely as it was given in the indictment and the judge's charge, and not otherwise. Even if it could be contended with any show of reason that Modesta Espnosa's name was incorrectly spelled and that the letter *i* should have been inserted between the letters *p* and *n,* that they were both in fact and in law idem sonans can not be questioned under the authorities.

This court, in Henry v. State, 7 Texas Crim. App., 388, quoted and expressly approved what the Supreme Court of Alabama said in Ward v. State, 28 Ala., 53, as follows: "The books abound in hairbreadth

distinctions, but we apprehend the rule to be that if the names may be sounded alike without doing violence to the power of the letters found in the variant orthography, then the variance is immaterial." That doctrine has been repeatedly held and applied in many cases in this State.

In discussing the idem sonans of names, this court, in Rowan v. State, 57 Texas Crim. Rep., 625, said: "Mr. Abbott, in his Trial Brief, section 680, lays down the following rule: 'A variance is not now regarded as material unless it is such as might mislead the defense, or might expose the accused to the danger of being put twice in jeopardy for the same offense.' And Mr. Rice, in his valuable work on Evidence, lays down the following rule: 'There is a rule of grow-- ing importance by which courts, for many years, have evinced, by their decisions, a disposition to recede from the fading adherence to common law technicalities, and hold rather to substance than mere form. Modern decisions conform to the rule that a variance, to be material, must be such as to mislead the opposite party to his prejudice, and hence the doctrine of idem sonans has been much enlarged by modern decisions, to conform to the above salutary rule. The law does not treat every slight variance, if trivial, such as the omission of a letter in the name, as fatal. The variance should be a substantial and material one to be fatal.' See sec. 123, vol. 3. It may be said to be wholly immaterial as to how the word is spelled. If practically they have the same sound they will be regarded as idem sonans, and if the words have the same sound then there is no fatal variance, although the two names may have been spelled slightly different. See Parchman v. State, 2 Texas Crim. App., 228. And if the words can be sounded alike, without disturbing the power of the letters that is found in the variant orthography, the variance will be immaterial. . . . Identity of sound may be regarded as a surer method of designating the names of persons than that of depending upon mere identity in the orthography. . . . It may be said that the decisions of the different courts are not uniform upon this subject, and that we can find authorities both ways upon the subject, one line of authori- ties holding that if a vowel is substituted that gives to the instrument a different sound, then it is a variance, and others holding that the mere fact of the change of the vowel giving it a different sound would not be a variance. However, 'o' sometimes is given the sound of 'a' and 'a' sometimes the sound of 'o'. We, therefore, hold in this case that Benoni and Benani are practically idem sonans, and that the vari- ance is not of sufficient materiality as could mislead the defense, and a conviction for rape upon a girl by the name of Benoni where the indictment charged Benani would be a complete protection."

This decision in the Rowan case was cited, quoted and approved in Feeny v. State, 62 Texas Crim. Rep., 590, which is also in point.

In Gentry v. State, 62 Texas Crim. Rep., 500, this court held that the name "Laun Gentary" was idem sonans with "Lon Gentry," and

in that case held: "The doctrine of *idem sonans* has been much enlarged by modern decisions to conform to the growing rule that a variance, to be material, must be such as would mislead a party to his prejudice. State v. White, 34 S. C., 59, 12 S. E. Rep., 661; 27 Am. St. Rep., 783.

"Again, as laid down in 29 Cyc., 272, the rule is as follows: 'The law does not regard the spelling of names so much as their sound. By the doctrine of *idem sonans* if two names, although spelled differently, sound alike, they are to be regarded as the same. Great latitude is allowed in the spelling and pronunciation of proper names, and in all legal proceedings, whether civil or criminal, if two names, as commonly pronounced in the English language, are sounded alike, a variance in their spelling is immaterial. Even slight differences in their pronunciation is unimportant; if the attentive ear finds difficulty in distinguishing two names when pronounced, they are *idem sonans,*' citing in note 54, page 272, a large number of names which are held by the courts to be *idem sonans.* In many of them the spelling is much different, and if the pronunciation was attempted to be given of each letter and syllable in the name in an accurate and particular way, there would be much greater difference than in the names we hold *idem sonans* in this case. No injury whatever occurred to the appellant by spelling his name in the complaint 'Laun Gentary' and in the information 'Lon Gentry.'"

There can be no particle of doubt as to the identity of the party Modesta Espnosa, from whom appellant received said horse, knowing it to be stolen, whatever way his name was spelled or should have been spelled. He was one and the same person and was the person who stole the animal in this instance and from whom appellant received it. Appellant could not possibly have been deceived or misled in any way by the way this person's name was spelled or misspelled. We do not regard the case of Weitzel v. State, 28 Texas Crim. App., 523, applicable or in point. In that case the proof showed that the name of the person from whom the property was alleged to have been stolen was spelled differently in the indictment and pronounced differently from the way the name was really spelled and pronounced. All of the later decisions and authorities, as stated above, make a distinction between that case and this.

Appellant is mistaken when he contends that the judgment and sentence adjudge appellant guilty of *concealing* the said stolen property. Both expressly adjudge him guilty of *receiving* it. That was what he was indicted for; that was the sole question submitted to the jury, of which the verdict found him guilty.

There is no reversible error in this case, and the judgment will be affirmed.

*Affirmed.*

## ON REHEARING.

### June 29, 1917.

PRENDERGAST, JUDGE.—At the time of the submission of this case, appellant's able attorneys filed a lengthy printed brief presenting only the questions discussed in the original opinion. In their brief they made no suggestion that the witness Espnosa had not been sufficiently corroborated; hence in our former consideration of the case and the opinion rendered our attention was not directed to that question. Neither does appellant in any ground of his motion for rehearing make that point or even suggest it. However, merely in oral argument submitting the rehearing motion he did suggest that the evidence was not sufficient to show that said accomplice witness was corroborated. We have, therefore, again carefully read and considered the testimony on this point and in our opinion the evidence was sufficient to show that the accomplice was corroborated as required by law. We see no necessity of reciting the testimony covering this point.

All the other questions were fully considered and properly determined against appellant as shown by the original opinion. No further discussions on any of those points is necessary.

The motion is overruled.

*Overruled.*