W. H. MITCHELL v. THE STATE.

No. 5274. Decided March 5, 1919.

**1.—Murder—Defense of Another—Force Necessary—Charge of Court.**

Where, upon trial of murder, defendant's testimony raised the issue of defense of another, it was reversible error to instruct the jury in the court's charge on defense of another that the defendant was authorized to use

only such force as was necessary to prevent the death, etc., of the assaulted party, under the facts of the instant case. Following Carson v. State, 57 Texas Crim. Rep., 394, and other cases.

### 2.—Same—Evidence—Conduct of Deceased—Motive.

The propriety of receiving evidence that the parties did not seem on good terms, and that the deceased seemed to be in a good humor, is recognized in the instant case where the testimony was relevant to the issues involved. Following Bennett v. State, 39 Texas Crim. Rep., 648, and other cases.

### 3.—Same—Newly Discovered Evidence—Presumption.

In the absence of a statement of facts heard on motion for new trial, with reference to newly discovered evidence, the presumption is that the court correctly overruled the same. Following Lopez v. State, 208 S. W. Rep., 167, and other cases.

Appeal from the District Court of Limestone. Tried below before the Hon. A. M. Blackmon, judge.

Appeal from a conviction of murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*J. A. Tucker, Wm. Kennedy, Jas Kimbell, W. T. Jackson,* for appellant.

*E. A. Berry,* Assistant Attorney General, *Callicutt & Johnson,* and *J. E. Bradley,* for the State.—On question of courts charge on self-defense: Summers v. State, 66 Texas Crim. Rep., 557, 148 S. W. Rep., 774.

MORROW, JUDGE.—Appellant was convicted of the murder of Arthur Jordan.

The homicide resulted from a blow with a breast-yoke inflicted upon the deceased by the appellant. The theory arising from the State's testimony was that while the deceased was in a quarrel with the appellant's son that the appellant made the attack which resulted in the homicide, preceded by no demonstration on the part of the deceased threatening injury to the son of appellant. The appellant's theory, supported by his own testimony and that of several of his witnesses, was that the deceased was armed with a pistol and had provoked a quarrel with appellant's son, stating, with an oath, that he was going to kill him, immediately followed by a demonstration indicating that he was about to draw his weapon and that the appellant going hurriedly to the rescue of his son, picked up a breast-yoke and struck one blow with the intent only to save his son from injury. The parties were on the premises of the deceased at a gathering at about three o'clock in the morning. Appellant claimed that he was out in a pasture in an automobile for the purpose of smoking, when the deceased came out and began

a difficulty with a witness named Walts in which the deceased made a remark to the effect that he was in possession of a pistol. Shortly thereafter the deceased engaged in abusive language · toward appellant's son and appellant got out of the car to prevent a difficulty between them; that some one else interfered and he, thinking the difficulty had ended, started back to .a wagon to lie down when he heard the deceased cursing, and looking back heard him say to appellant's son: "You God damn long legged son-of-a-bitch, I am going to kill you." That appellant then started toward them, ran over a breast-yoke, picked it up and struck the deceased. At the time he struck, the hand of deceased was on his hip, he was near the appellant's son and the appellant believing that his son was about to be killed struck the blow to protect him.

Several witnesses testified that the deceased was armed with a pistol some of them indicating that he had it in his hand at the time appellant struck him. One of these, appellant's son, testified that the deceased approached him, called him a "long-legged son-of-a-bitch" and said "I am going to kill you;" that it was night-time but that he saw in his hand what he took to be a gun. He and deceased were about three or four feet apart and in a few seconds after the remark was made the appellant struck the deceased while he was in the act of using his pistol.

The court, in connection with his charge on self-defense, gave the following: "As heretofore instructed, a reasonable apprehension of death or of serious bodily injury to defendant's son at the hands of the deceased, Arthur Jordan, will excuse the defendant in using all force necessary to protect his son from death or serious bodily injury, but you are further instructed that the defendant was authorized to use only such force as was necessary, and no more force than was necessary to prevent the death or serious bodily injury of his son, and would not be justified in proceeding beyond the point where danger to his said son existed, as viewed from his standpoint at the time he acted." Exception was made to this charge in a timely manner and is properly reserved. It has often been declared that under such circumstances as those detailed it is improper to instruct the jury on the law of excessive force for the reason that it relates to an issue not raised by the evidence and is calculated to impress the jury with the idea that in the opinion of the court the force used was excessive. Branch's Criminal Law, sec. 451; Branch's An. P. C., p. 1071, sec. 1920. The reasons controlling this position are succinctly and accurately stated by Judge Ramsey in Carson v. State, 57 Texas Crim. Rep., 394, and by Judge Davidson in Huddleston v. State, 54 Texas Crim. Rep., 93. We deem it unnecessary to repeat them.

The propriety of receiving evidence that the parties did not seem on good terms, and that the deceased seemed to be in a good humor, where they are relevant to the issues involved, has often been recog-

nized. Bennett v. State, 39 Texas Crim. Rep., 648; Logan v. State, 53 S. W. Rep., 694; Owen v. State, 52 Texas Crim. Rep., 65; Gabler v State, 49 Texas Crim. Rep.. 623; Branch An. P. C., sec. 132. The complaint of this evidence is not sustained.

It appearing from the record that the appellant's motion for new trial based in part upon newly discovered evidence, was controverted and that the trial court heard evidence thereon, this court is not in a position to pass upon the correctness of his ruling in deciding the issue against appellant, where the evidence which influenced the action is not preserved by bill of exceptions or statement of facts. On appeal the presumption under the circumstances, is that if the affidavits attached to the motion for new trial were used in evidence they were met by controverting facts sufficient to support the trial court's action. Lopez v. State, 208 S. W. Rep., 167; Reyes v. State, 81 Texas Crim. Rep., 588, 196 S. W. Rep., 532, and cases listed.

The error in the charge mentioned requires a reversal of the judgment which is ordered.

*Reversed and remanded.*