## No. 2674.

## DAVE McCLEAVLAND *v.* THE STATE.

1. ASSAULT TO RAPE.—CHARGE OF THE COURT upon a trial for assault to rape instructed the jury that "the law provides that any person shall assault a woman with the intent to commit the offense of rape, he shall be punished," etc.; the error complained of being the omission of the word "if" betweeen the words "that" and "any." *Held*, that the omission is immaterial in view of another paragraph of the charge which properly defines the offense.

2. SAME.—The court charged the jury that "the use of any unlawful violence *offered* to another with intent to injure," etc., the objection urged being to the use of the word "offered" instead of the statutory words "upon the person," in defining assault and battery. The defenses interposed were alibi, fabricated accusation, and that the acts charged against the accused, if proved, would not show an intent on his part to rape. Whether or not the acts of the defendant constituted an assault and battery was not an issue of the case, and, under such circumstances, it is *held* that the substitution of the word "offered" for the words "upon the person" was not error to the prejudice of the accused.

3. SAME.—However erroneous a charge of the court may be, if it redounds to the benefit of the accused he can not be heard to complain.

4. SAME—NEW TRIAL—NEWLY DISCOVERED EVIDENCE—FACT CASE.—See the statement of the case for evidence sufficient to support a conviction for assault with intent to rape, but also for newly discovered evidence *held* to have demanded of the trial court the award of a new trial.

APPEAL from the District Court of Smith.   Tried below before the Hon. F. J. McCord.

The conviction in this case was for an assault with intent to rape, upon the person of Olie Stephens, and the penalty assessed against the appellant was a term of two years in the penitentiary.

Olie Stephens was the first witness for the State.  She testified that she was twelve years old, and lived with her father at his house in Smith county, Texas.   Witness's mother was dead.   On the second Sunday in July, 1887, the defendant came to witness's father's house, and told witness that his sister Osie wanted to see witness, and had sent him for her.   Witness replied that she could not then leave home.   Defendant then asked witness to go with him to the orchard and show him some peaches.   Witness and her sister Lula went with him to the orchard.   When Lula had filled a bucket with peaches, she went with it to the house. After she had gone defendant told witness that he would give her a silk handkerchief if she would lie down for him.   Witness declined and turned to go back to the house, when defendant seized and threw her to the ground, got straddle of her and tried to pull her clothes up.   Witness's hands being free, she held her clothes down and called to her sister Lula.   Lula shortly appeared, and as soon as defendant saw her he sprang up and ran off through the orchard.   Witness did not tell her father because she was afraid he would whip her for going into the orchard with defendant.   Her father heard of it through her little brother, who overheard her and her sister Lula talking about the assault.   What the defendant did, he did without the witness's consent.   The assault occurred shortly after the dismissal of Sunday school.

Lula Stephens, for the State, testified substantially as did the prosecutrix, up to the time that she left the defendant and the prosecutrix in the orchard.   She stated in addition that when she put her bucket of peaches in the house, she started through the orchard to a neighboring house to get some fire for the purpose of preparing dinner.   She had proceeded about fifty yards when she heard Olie calling for her.   She ran to the place near the old well in the orchard, where she had left Olie but a few minutes before.   When she got in seeing distance, she saw that defendant had Olie down in the weeds, was on top of her, and was trying to pull her clothes up.   About that time the defendant

discovered witness, and jumped up and fled. Olie then went with witness to the neighbor's house and thence back home.

Miles Stephens testified, for the State, that he was the father of Olie and Lula Stephens, the preceding witnesses. He was not at home on the day of the alleged assault. A few days afterwards he heard his infant son, who could scarcely talk, saying something about Dave McCleavland and Olie. He thereupon called up Olie and Lula, and asked them what McCleavland had done. They told him that on the day of his absence from home defendant threw Olie down in the orchard and attempted to have forcible connection with her. Witness asked Olie why she had not informed him sooner. She replied that she was afraid witness would whip her for leaving the house when he had told her not to leave it. Witness then whipped her for leaving the house and for not informing him of the outrage, and then went before John Price, a negro justice of the peace, and made complaint against the defendant. On the Thursday after the complaint was filed, Jim McCleavland, defendant's father, and Butler came to witness's field where witness was at work, and witness and Jim McCleavland had a private conversation about this matter. Witness told said McCleavland what his daughters had told him about the matter, as he has testified here, but did not tell him that he had to whip Olie to make her confess to the outrage perpetrated on her.

The State closed.

George McCleavland, the brother of the defendant, testified, in his behalf, that he and the defendant and Albert Mitchell were together all day on the second Sunday in July, 1887, and he knew that the defendant was not at Miles Stephens's house on that day. Witness, defendant and Albert Mitchell went direct from Sunday school on that day to aunt Aithey Mitchell's house, where Albert ate dinner. The three parties thence went to witness's house, where defendant and witness ate dinner. Defendant and Albert then went to church, and witness stayed at home. According to this witness the first Sunday in July was the twenty-fifth day of that month, and the second Sunday was the eighteenth day of the month, which information he declared he obtained from the columns of a reliable almanac. Albert Mitchell testified, for the defense, substantially as did the witness George McCleavland.

W. T. Mitchell testified, for the defense, that, just before sun down on the day of the alleged assault, he met defendant and

Albert Mitchell near Zion church, which was three and a half miles from Miles Stephens's house.

Jim McCleavland, the father of the defendant, testified, in his behalf, that the defendant was sixteen years old.  Witness, a few evenings after the complaint in this case was filed, had a conversation with Miles Stephens, the father of Olie, in the course of which conversation Miles Stephens told him that Olie first denied that defendant had thrown her down, but that he whipped her and made her confess.

Calhoun Butler testified, for the defense, substantially as did Jim McCleavland, and in addition that he and Jim McCleavland were traveling over the country inquiring after the health of the community when they met Miles Stephens, at the time said Stephens and Jim McCleavland had the conversation deposed to by himself and McCleavland.    Witness supposed that the meeting of himself and McCleavland on that day was by chance.  He did not know whether he or McCleavland proposed to go by Stephens's.    This case was not discussed by witness and Jim McCleavland on that day before they reached Stephens's house, nor did they speak of it after they left.    The defendant then introduced the complaint made by Miles Stephens before the justice of the peace, and the case was closed.

In support of his motion for new trial, based upon newly discovered evidence, the defendant filed the affidavit of Miles Stephens to the effect that in his testimony on this trial he was mistaken in locating the time of the offense on the second Sunday in July, 1887; that the assault occurred on the Sunday in July when he attended services at Zion church, conducted by the Rev. Mr. Wesley, which, upon reflection and information, he now knew to have been on the first Sunday in that month. The defendant also filed the affidavit of the Rev. Mr. Wesley to the effect that he preached in Zion church on the first Sunday in July, 1887, and on no other Sunday in that month, and that he saw Miles Stephens at the Zion church during the service on that said first Sunday.    The affidavits of several other witnesses were such as, if they testified on a new trial as they stated in their affidavits, and such testimony was found to be true, it would establish the defendant's whereabouts, on the entire first Sunday in July, elsewhere than at Miles Stephens's house or in his orchard, where the offense was alleged to have been committed.

*White & Edwards,* for the appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

Hurt, Judge.    This is a conviction for assault to rape.
The following errors are assigned: (1.)    That there was error
in that portion of the court's charge to the jury which instructs
them that "the law provides that any person shall assault a
woman with intent to commit the offense of rape, he shall be
punished," etc.    The word "if" is omitted from between the
words "that" and "any."    There is a full and correct description
of the offense in another part of the charge, and the paragraph
complained of is simply to inform the jury as to the punishment.
The omission of the word "if" could not have injured appel-
lant.

(2.)    "The court erred in that portion of the charge which
reads: 'The use of any unlawful violence offered to another
with intent to injure her,'" etc.    "Offered" is used, instead of
"upon the person," to define an assault and battery.    There was
no issue upon the trial as to whether the acts of defendant con-
stituted an assault and battery upon the person of the prosecutrix.
The defense was alibi, fabricated accusation, and that the acts
charged, conceding them to have been committed, were not such
as to warrant the inference of an intention to rape.    There was
no error in this charge that resulted in injury to appellant, under
the circumstances.

(3.)    Error in this:    "The intent at the time on the part of the
defendant must have been to overcome all resistance," etc.    The
objection is that this charge does not specifically point out the
*time* referred to in the charge.    Now, evidently no juror could
have misunderstood what *time* was alluded to in this part of the
charge, when considered in connection with the whole charge.
Clearly the jury must have understood it to be the time when
the assault to commit the rape was made, that they must believe
it was the intention of the defendant to overcome all resistance
which might be offered by the prosecutrix.

(4.)    "If defendant assaulted the prosecutrix with a view to
fondle with her, and by persuasion induce her to comply and
consent to intercouse, it would not be a rape."    The objection
urged to this charge is that there is no evidence to support it.
If this be so, the charge was favorable, and not at all calculated
to injure the defendant.    There was no objection to the charge,
and no instructions were asked upon this subject.

(5.)    "The court erred in overruling defendant's motion for

new trial, because the conviction was unsupported by the evidence, and because of newly discovered evidence." The law of the case was fully, clearly and very favorably submitted to the jury; and, while we might not, if jurors, have arrived at the conclusion reached by them, still we doubt the propriety of reversing the judgment upon the ground that the evidence does not support the verdict. Upon the ground of "newly discovered evidence," however, we are of opinion that, under the peculiar circumstances of this case, a new trial should have been granted. The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered November 9, 1887.