LUTHER COLLINS v. THE STATE.

No. 7299.   Decided June 6, 1923.

Rehearing denied October 17, 1923.

</div>

**1.—Rape—Insufficiency of the Evidence—Identity of Defendant.**

Where, upon trial of rape inflicting the death penalty, the identity of defendant was not sufficiently proved, justice and fairness demands that appellant should have an opportunity to present to a jury, upon another trial, such evidence as may be admissible and has become available since his conviction. Following Lumplin v. State, 84 Texas Crim. Rep., 33, and other cases.

**2.—Same—Newly Discovered Evidence—Rule Stated.**

It is difficult in application to draw the distinction between newly discovered evidence which could impeach a witness who testified on the trial, and that showing such witness to have been mistaken about matters testified to by him material to the State's case. Following Johnson v. State, 51 Texas Crim. Rep., 605, and other cases.

**3.—Same—Rehearing—Newly Discovered Evidence—Affidavit.**

When, on appeal, it appears that in passing on the motion the trial judge relied upon evidence other than that furnished by the affidavit attached to the motion for a new trial and the contest by the State thereof,

this court cannot determine whether the issue of fact was correctly decided in the absence of a statement of facts, it must therefore presume that the court's ruling upon the evidence before it was correct.

Appeal from the Criminal District Court of Harris. Tried below before the Honorable C. W. Robinson.

Appeal from a conviction of rape; penalty, death.

The opinion states the case.

*Mathis, Heidingsfelder, Teague & Kahn,* for appellant. Cited, cases in opinion.

*R. G. Storey,* Assistant Attorney General, and *J. Dixie Smith,* District Attorney, for the State.

HAWKINS, Judge.—Appellant was charged with rape upon Myrtle Davis. Upon conviction the penalty of death was assessed.

The evidence presents a most unusual occurrence. Myrtle Davis was a married woman twenty-three years old. She was not living with her husband. She had two children who were living with their grandparents. At the time of the transaction complained of she was a waitress in a restaurant run by Mr. Swayne in the city of Houston. She roomed something like two blocks from the restaurant. On the night of January 24th, 1922, she left her place of employment at five minutes to eight o'clock and started to her rooming house. It was raining at the time and according to her statement she ran down Tenth street and across over to Washington, and on the corner of Washington and Tenth appellant was standing. She says appellant told her to stop and upon her refusal he threatened if she did not he would shoot her; that he had a pistol in his hand at the time; that Ross Traina came across from the opposite corner of the street and asked her "why she did not go home out of the rain," whereupon the negro said to him, "Since you come up and butted in I will take you with me;" that he then at the point of the pistol compelled her and Traina to accompany him down the street some distance and across some railroad tracks to a wood yard, at which was situated a small building which housed the dynamo which run the wood cutting machine; that he forced her and Traina to go into the house and then entered himself; that he pulled some canvas from the dynamo on to the ground, compelled her to lie down and there had intercourse with her; that he compelled the boy to lie down, cross his hands and remain in that position while appellant copulated with her; that after the act was completed he went out of the door of the shack, telling her and Traina they had better get away before the officers got them; that during the transaction she lost her belt; that she felt around on the sawdust until she found it and that she and Traina went im-

mediately back to the restaurant and called Mr. Swayne, who had closed up in the meantime, and related what had occurred to him. She identified appellant, and says she had seen him on the corner where he accosted her every night for two weeks; that before this particular occasion she had never passed the point where appellant would be standing without someone else being nearby; that on this particular night no one was in sight and that she did not know Traina was near until after the negro had accosted her. We gather from the record that Washington street was a busy thoroughfare, with street cars and automobiles generally passing, and upon which several jitney lines operated, and with electric street lights burning. When Traina and Mrs. Davis reached the restaurant, the clothing of both was covered with sawdust and there was mud on their feet. After the transaction had been reported to him Swayne telephoned to the officers and Mrs. Davis gave them a description of the negro which was transmitted to police headquarters and all officers notified to be on the lookout for a negro suiting the description. The description was a yellow negro, about five feet ten inches tall, and wearing khaki clothes. The height of the party making the assault seems to have been arrived at by Mrs. Davis saying he was about the height of one of the officers present. Traina did not undertake to describe the negro, but told the officers at the time that he could only describe him by his clothes and did not take notice of his height. It was only about thirty minutes after Mrs. Davis left the restaurant until she and Traina reappeared there complaining of what had occurred. Traina is a young man twenty-two years old. He had been in the restaurant getting something to eat and had only been gone a few minutes when Mrs. Davis started home. He claims to have been standing across the street waiting for a jitney when he saw a negro stop her. His statement agrees with Mrs. Davis' as to the main incidents of the transaction. He says that when he saw the negro accost her he went across the street and spoke to her; that the negro with a pistol compelled him to go with them, and to remain quietly as a witness to the assault. He denied that he was made to lie down, but says he was made to sit in the corner of the wood shed with his hands crossed while the rape was accomplished. Although the alleged assault occurred under most peculiar and unusual circumstances it may be conceded that Mrs. Davis was assaulted in the manner claimed by her and Traina. The latter was so overcome by fear or excitement that he fainted when they reached the restaurant after the occurrence.

The matter that gives us most concern and upon which the decision of this case must turn is the question of the identity of appellant as the party guilty of the assault. The evidence shows him to have been six feet five inches tall. About eleven o'clock two officers arrested appellant some twenty blocks from the scene of the assault

and brought him to police headquarters as a suspect. The chief of police asked at the time why they wanted to bring in the tallest negro they could find, saying he wanted a negro five feet nine or ten inches tall and not the tallest one in the city. He talked to appellant and becoming convinced that he was not the party wanted released him. The officers making the first arrest testified that appellant had no pistol at the time he was taken into custody and had opportunity to dispose of one after he was approached by them. After he was released he started back to his rooming house and was again "picked up" by other officers who were not apprised of his first detention. They carried him to Mrs. Davis' rooming place and by the aid of a flashlight she claimed to identify him as the guilty party. She in company with the officers went to the police station, Traina in the meantime having been found and taken there. Upon being asked if he knew the negro Traina said he did not, and again stated he could only say appellant had on khaki clothes likes those worn by Mrs. Davis' assailant. Although cautioned to be careful by the chief of police Mrs. Davis again asserted that appellant was the negro who had committed the assault. The chief of police was evidently doubtful as to whether he had the right party. He went so far as to make an examination of appellant's private parts. He says that while not a physician he had reason to believe the negro's privates were not in a condition to indicate that he had recently had intercourse with anybody; that they were dry, scaly and had the appearance of not having been washed for some days. A circumstance tending to identify appellant as the guilty party is testified to by one of the officers who made the second arrest. He was shown by Mrs. Davis the route taken by her assailant upon leaving the "wood shanty," and compared one of appellant's shoes with tracks found which corresponded. A witness who roomed at the same house with Mrs. Davis testified that a *little before eight o'clock he passed the point on the street* where she was first accosted and saw a negro whom he identified as appellant standing near a telephone post. Outside the two incidents mentioned the state relies solely on the evidence of prosecutrix as to the identity of appellant.

The record shows that an aged and respected attorney,—but one who had long retired from active practice and with little experience in criminal trials, being convinced from newspaper reports of the transaction that appellant was not guilty,—volunteered to defend him and was appointed by the court to perform that duty. No exceptions were reserved during the progress of the trial, although the statement of facts reveals certain damaging testimony which might have been excluded upon objection.

Appellant's own evidence is positive that he is not the guilty party, and was not in the vicinity of the alleged assault; that he was at a

point some twenty-seven blocks from there. A number of witnesses of his own race testified to the same effect. Their evidence is subject to criticsm upon the ground that it conflicted as to the exact location of appellant, whether down stairs in a negro cafe or upstairs in a negro boarding house; but they agreed upon the point that appellant was many blocks away from the scene of the crime.

A new trial was sought for newly discovered evidence. Many of the affidavits attached go only to impeach the prosecutrix generally; they will not be considered. Others have challenged our attention. Ross Traina,—while not identifying appellant positively and when pressed upon the point limited his identification to the kind of clothing worn by appellant as being similar to those worn by the party committing the assault,—throughout his testimony relates what "defendant" did during the transaction under investigation. There is attached to the motion for new trial the following affidavit of Traina.

"I am the Ross Traina who was with Myrtle Davis at the time she was assaulted by a negro; during the entire time I was with her in the room, at no time did the negro make or cause me to lie down; I also state that shortly after this occurrence, or rather about midnight of that night, I was called on to identify this negro; I said then that the only way I could identify him was by his clothes, Myrtle said he was the man; I did not believe then that he was the man and I could not identify him except that I said he had on khaki clothes like these; at the time I testified on the stand I did not at that time believe that he was the negro and I told Mr. W. A. Swayne at the Court House while the trial was going on that the negro they were trying was not the negro that made this assault; I told my brother Rocco Trainer before the trial and since the trial that the negro Luther Collins that they had tried was not the man and I say now, under oath, that he is not the man that assaulted the girl on the night of January 24th, 1922; the officers at the Court asked me to identify him and I told them that I could not do it only by his clothes; I have thought this matter over seriously since the trial and I am not willing for a man to be hung, although a negro, partially upon my identification. I do solemnly swear that the negro who has been convicted of this offense is not the negro who assaulted Myrtle Davis on that night."

The affidavit containing the foregoing statement was made by Traina on April 7th. On April 19th the state obtained an affidavit from him, in which he modifies his former statement only to the extent of saying that he did not intend to say positively that appellant was not the party who committed the assault but only to say that he "did not believe it was the right negro;" in the state's affidavit he still asserts such belief, and says, "I am still in doubt, and believe now that it is not the man." This witness apparently realized that in

part at least the conviction may have rested upon his testimony. If his evidence before the jury had been as indicated in the affidavits it would have said to them that, notwithstanding the similarity in clothing worn by prosecutrix's assailant and the appellant as testified by witness it was his judgment that appellant was not the man. We are of opinion the case upon this point falls within the principle announced in Brown v. State 13 Texas Crim. App. 59; Clark v. State, 29 Tex. Crim. App., 437; Heskew v. State, 14 Tex. Crim. App., 606.

. Another affidavit attached to the motion for new trial is that of ·J. H. Crain to the effect that about seven-fifty P. M. on the night of the assault he passed the point where Mrs. Davis was first accosted, and saw a party leaning against a building; that he went to the jail next morning and saw appellant and knows he is not the man he saw. The time this witness passed was only five minutes before prosecutrix claimed to have been assaulted by appellant at the same point. If this testimony had been available on the trial it might have been of some probative force in favor of appellant.

Another affidavit attached to the motion is from Mrs. Stallcup. There are many things therein to which we do not advert. She was chairman of the Waitress' Union. She says prosecutrix told her after the trial that after the negro had intercourse with her he gave her three dollars and twenty cents, which she took because she was afraid to refuse it, and upon being asked if she was absolutely certain it was the negro who had been convicted, prosecutrix replied, "*I am not certain, but I have already sworn positively it is him, and I am going to stick to it, makes no difference what happens.*" This statement of Mrs. Stallcup was denied by prosecutrix and also by another witness who claims to have heard the conversation between them in affidavits attached to the state's controversion of appellant's motion. If Mrs. Stallcup's evidence had been before the jury its truthfulness or otherwise would have been for them. It is difficult in application to draw the distinction between newly discovered evidence which could only impeach a witness who testified on the trial, and that showing such witness to have been mistaken about matters testified to by him material to the state's case. Heskew v. State, 14 Texas Crim. App., 606; Estrada v. State, 29 Texas Crim. App., 169, 15 S. W. Rep., 644; Johnson v. State, 51 Texas Crim. Rep., 605, 103 S. W. Rep., 893. The case of Tate v. State, 66 Texas Crim. Rep., 198, 146 S. W. Rep., 169, appears to regard similar testimony purely as impeaching. We are not called upon to determine what effect we would give to such . evidence if presented alone as ground for new trial as newly discovered. Many other affidavits are attached to appellant's motion from new witnesses, some of which strengthen his alibi; others are · upon the issue that he owned no pistol at the time of the alleged offense.

We have reached the conclusion that considering the record in its entirety the case is one in which justice and fairness demands that appellant should have an opportunity to present to a jury upon another trial such evidence as may be admissible and has become available since his conviction. Lumkin v. State, 84 Texas Crim. Rep., 33, 204 S. W. Rep., 431; Ford v. State, 41 Texas Crim. Rep., 1, 51 S. W. Rep., 935; on rehearing, 53 S. W. Rep., 869; Ray v. State, 24 Texas Crim. App., 377; McCleaveland v. State, 24 Texas Crim. App., 202, 5 S. W. Rep., 664; Brown v. State, 42 Texas Crim. Rep., 176, 58 S. W. Rep., 131.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

### ON REHEARING.

### October 17, 1923.

MORROW, Presiding Judge.—State's counsel insists that the rules of practice preclude the consideration by this court of the affidavits embraced in the motion for new trial to which reference is made in the original opinion. He maintains this position because of the recital in the judgment overruling the motion for new trial to the effect that "said motion and the evidence thereon having been heard by the court." It is the rule that when the motion for new trial raises questions of fact, the trial judge has the privilege of determining whether they are true, and "in such case the judge shall hear evidence by affidavit or otherwise and determine the issue." (Code of Crim. Proc., Art. 841.) When on appeal it appears that in passing on the motion, the trial judge relied upon evidence other than that furnished by the affidavits attached to the motion for new trial, and the State's contest thereof, this court cannot determine whether the issue of fact was correctly decided in the absence of a statement of facts or bill of exceptions embracing the evidence that was heard, and must therefore presume that the court's ruling upon the evidence before it was correct. When it does not appear that there was other evidence, the correctness of the ruling will be tested by the affidavits. Washington v. State, 86 Texas Crim. Rep., 652, 218 S. W. Rep., 1043. Under the rule favoring a liberal consideration of the record in favor of a decision upon the merits in a case in which the death penalty is assessed, the recital in the judgment in this case does not characterize it as one in which the hearing was "otherwise than" by the affidavits attached to the pleading. It may be added that for the reason indicated in the original opinion that considering the evidence and the manner of trial, there is such doubt touching the identity of the offender as rendered it necessary that the appellant be awarded another trial.

The motion for rehearing is overruled.

*Overruled.*