Other cases adhering to this principle will be found collated under section 1890, p. 1049, Branch's Ann. P. C. See, also, Brice v. State, 78 Tex. Cr. R. 42, 179 S. W. 1178; Mettall v. State, 89 Tex. Cr. R. 216, 232 S. W. 315; Lyles v. State, 91 Tex. Cr. R. 127, 237 S. W. 558; Lawson v. State, 96 Tex. Cr. R. 322, 257 S. W. 559.

The offense charged in the present case was the unlawful manufacture of intoxicating liquor. Regardless of the confession, the evidence amply established that this offense had been committed by some one, and the corpus delicti was thus shown. We see no reason why the principle heretofore announced in many cases should not also be pertinent in the present instance. The confession of appellant (the crime already having been established by other evidence) is held to be sufficient to show his guilty connection with the offense.

Believing the evidence amply sufficient to support the judgment, an affirmance is ordered.

### On Motion for Rehearing.

In view of appellant's motion for rehearing, we have re-examined the authorities upon which our conclusions were based. We are confirmed in our opinion that the case has been properly decided.

The motion is overruled.

---

## CROUCHETT v. STATE.   (No. 9109.)

(Court of Criminal Appeals of Texas. April 8, 1925.)

1. Criminal law ⏂720(3)—Acts and conduct of defendant's wife subject of proper argument where part of res gestæ.

Acts and conduct of defendant's wife immediately prior to and at time of homicide were subject of proper argument by state's counsel, where they were a part of res gestæ and were proved without objection.

2. Criminal law ⏂1119(4) — Argument of state's counsel not shown to be improper.

Argument of state's counsel, referring to acts and conduct of defendant's wife immediately·prior to and at time of homicide, was not shown to be improper, where nature of reference and whether being without record was not revealed by bill of exceptions, nor by special charge which defendant requested on the subject.

3. Criminal law ⏂829(9)—Refusal of defendant's requested charge on burden of proof held not erroneous in view of court's instructions.

In murder prosecution, refusal of defendant's special charge that state had burden of showing that defendant did not kill deceased in self-defense held not erroneous, in view of court's instructions on law of self-defense and reasonable doubt.

4. Criminal law ⏂823(9)—Charge on burden of proof as bearing on issue of self-defense held not reversible error.

In murder prosecution, charge on burden of proof as bearing on issue of self-defense, that to warrant a conviction it was essential that malice exist and that it be proved beyond a reasonable doubt, held not reversible error, in view of Vernon's Ann. Code Cr. Proc. 1916, art. 743, when considered with charge on presumption of innocence and necessity of establishing guilt by legal evidence beyond a reasonable doubt.

5. Criminal law ⏂1038(3), 1056(1)—When reversal warranted for court's failure to specially instruct on subject attempted to be covered in main charge stated.

Reversal for court's failure to give special instruction on subject which court attempts to cover in his main charge is not warranted generally, unless an exception is addressed to general charge in such timely manner to give court notice of supposed defect, so that it may be corrected, or special charges presented must be so framed as to specially call court's attention to some omission or inaccuracy in main charge.

6. Criminal law ⏂1122(6)—Refusal of special charges not considered, where not presented before court's charge read to jury.

Refusal of special charges on subject treated in main charge would not be considered by appellate court, in view of Vernon's Ann. Code Cr. Proc. 1916, arts. 737, 737a, 743, where neither by exception nor by specific special charge were supposed faults in main charge brought to attention of trial court, and record was silent as to whether such charges were presented before court's charge was read to jury.

7. Criminal law ⏂939(3)—New trial for newly discovered evidence held properly denied for lack of diligence.

New trial in murder prosecution for newly discovered evidence held properly denied for lack of diligence, though defendant was confined in jail and witness was confined in bed following homicide until defendant's trial, where she was daughter of defendant and on friendly relations with him, and was near place of homicide at time it occurred.

8. Criminal law ⏂939(1)—When motion for rehearing for newly discovered evidence granted stated.

Motion for rehearing for newly discovered evidence will not be granted, unless it shows diligence in discovering evidence.

9. Criminal law ⏂939(1)—New trial for newly discovered evidence from witness present at trial held properly denied for lack of diligence.

New trial for newly discovered evidence held properly denied for lack of diligence, where it consisted of a retraction of testimony that witness had given on trial and apparently before grand jury, and it did not appear that any effort to interview her at any time before close of trial was had, nor any reason preventing ascertainment from her of facts that she afterwards revealed.

---

⏂For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**10. Criminal law ⊚⇒938(4)—Usually evidence coming from witness present at trial not regarded as newly discovered.**

It is only in exceptional instances that evidence which comes from a witness present at trial is regarded as newly discovered.

**11. Criminal law ⊚⇒1090(16)—Motion for new trial for newly discovered evidence not required to be considered by appellate court.**

Motion for new trial for newly discovered evidence was not required to be considered by appellate court, where neither by bill of exceptions nor statement of facts was evidence brought before appellate court, upon which trial judge based his decision in overruling motion.

**12. Criminal law ⊚⇒1128(2)—Evidence necessary to secure review of overruling of motion for new trial by trial court stated.**

Where motion for new trial contains averments of facts aliunde record, and attached thereto are affidavits supporting averments, appellate court on reviewing trial court's action in overruling motion will consider affidavits attached thereto, if there is nothing in record which shows that trial court heard other evidence on motion, but, if record shows that court heard other evidence, appellate court cannot review order overruling motion for new trial, in absence of evidence which was furnished.

**13. Criminal law ⊚⇒1144(18)—No presumption that affidavits attached to motion for new trial for newly discovered evidence were considered, where order overruling motion recites that evidence was heard.**

Where order of court overruling motion for new trial for newly discovered evidence recited that evidence was heard, no presumption would be indulged that affidavits attached to motion were considered, or that they were alone considered, since appellate court would presume that trial judge was correct in overruling such motion and that he acted on evidence which justified his action.

**14. Homicide ⊚⇒250—Evidence held to sustain conviction for murder.**

Evidence *held* to sustain conviction for murder.

Appeal from District Court, Jefferson County; Geo. C. O'Brien, Judge.

Trazmond Crouchett was convicted of murder, and he appeals. Affirmed.

Samuel C. Lipscomb, of Beaumont, for appellant.

Tom Garrard, State's Atty., and Grover C. Morris, Asst. State's Atty., both of Austin, for the State.

MORROW, P. J. The offense is murder; punishment fixed at confinement in the penitentiary for life. Appellant shot and killed Loretta Babino, the sister of the appellant's wife.

Mary Crouchett, the appellant's 15 year-old daughter, testified in substance that she saw the tragedy. According to her evidence, the appellant, at his home about half an hour before the homicide, said he wanted to beat out the brains of the deceased with a stick. He went in search of the deceased, and upon his return his daughter remonstrated with him. He struck his daughter, who fled to the house of a neighbor, but was brought back home by the appellant, where she and her two brothers were required by the appellant to kneel. He had a pistol in his hand at the time. Leaving his sons and daughter kneeling, he went to the home of the deceased. A few moments later the shots were fired. The daughter testified:

"I don't know where my father went when he left home and left us on our knees. When I seen him he was gone over to Aunt Loretta's house. * * * Aunt Loretta came out and went back in, and before I had time to say, 'I wonder what he is going to do,' I heard the shot in the front part of the house, and heard the second one in the kitchen. * * * The other was around the house by the barrel of water; and after she fell he shot her again. * * * I don't know what my father did after that shot; that's when I screamed and run out of the house and said papa had done killed Aunt Loretta."

According to the witness, her aunt had been in the house only a few moments before her father went in, and soon after he went in they came out at the back of the house. The deceased was in front and the appellant was behind her. The witness said:

"The back door was facing towards our house. When I was looking at those things that I had just told about, I was standing with my hand on the door. I didn't see my brother. I don't know where Edna Coleman was; I didn't look to see where she was."

Ernest Crouchett, the appellant's 13 year-old boy, testified that the appellant took a stick away from him and said that he was going to beat Aunt Loretta's brains out. He took the stick with him. When he returned, his daughter Mary said: "He ought to be a crazy jake, walking in the street, hunting for Aunt Loretta to beat her brains out." Appellant grabbed his daughter and struck her, but she released herself and ran. Appellant had his pistol, which the witness had seen taken from under the bed before the stick was taken from the witness. The witness, his sister, and brother were told to get on their knees. Appellant demanded to know the whereabouts of their mother, and one of the children pointed towards Loretta's house. He first went to another house and then to that of Loretta. The witness said that his sister Mary was standing in the door, and that he was standing by the pump; that he saw his father go in Loretta's house and also saw her come out through the back door. She was hollering, and the appellant

was shooting at her. One shot had been fired before she came out. After she came out, he fired again and she fell. After she fell, he shot her again. The witness said that he could not see the shots, but saw the smoke, and that after she fell appellant went around the house, got her little pistol, and fired one shot with it while at the gate.

Another witness, Cecelia Thibedeaux, on hearing the shot, looked and saw Loretta jump out of the back door of her house. The appellant came out behind her, and just as she went around the first corner of the house he fired one shot. She fell before making the next corner. He walked up to her and shot her again while she was on the ground. The witness was about a half block away. She saw nothing in the hands of the deceased, and did not see her shoot. The deceased was running at the time.

According to Tappin, a witness for the state, the deceased, a short time before the homicide, had been at his store some 200 feet from her house. He heard the shooting at her house and saw the smoke. He saw some one running from the door, and heard her holler at the first shot. When the second or third shot had been fired he saw some one coming out of the door, but from his position he could only see the head of the person.

Another witness, Cora Jackson, testified that she heard the shot and afterwards saw Loretta on the side of her house. The appellant was behind her. He fired, and she fell. After she fell, he fired again. The witness did not see the deceased do anything at the time.

There were seven holes in the body of the deceased. The location is not made definite, nor does the testimony show whether the bullets went through the body of the deceased.

According to the testimony of Edna Coleman, she saw the appellant bring his son and daughter to his house and make them get on their knees. He then passed the house of the witness, which was next door, going in the direction of George Granger's house. This was about 15 minutes before the shots were fired. She afterwards saw him going towards Loretta's house, and later saw him with her, pointing his gun at her. They were then between the house and the gate and were close together. She was in front of him. When the witness next saw them, Loretta opened the screen door at the back of the house and screamed. The appellant shot her. She went around the house, and when she fell down he shot her again. After he shot her, the witness and the appellant's son, Ernest, were going in the direction of Loretta's house, when they were met by the appellant, who pointed two guns at them.

According to the appellant's testimony, the deceased had been thwarting his efforts to prevent his children from telling stories, and she had also tried to take his property. When his children told him that his wife was in the back yard, and finding this untrue, he made them kneel down. He went to George Briscoe's house in search of his wife. Briscoe asked him why he had his pistol along, and appellant said that he was going to take it back home. Briscoe told the appellant that his wife was with her sister Loretta. Upon reaching the gate of her house he was met by Loretta, who said, "Hello." She had not previously spoken to him. He asked if his wife was in the house, and upon receiving an affirmative reply he went in. As he entered the house, the deceased said: "I am going to kill you to-day; this is my chance." She fired at him. When she fired the second shot, he fled through the back door and she fired again. When he reached the gate, her pistol fell and he picked it up. Appellant said that the deceased had tried to take his home place away from him; that she had previously threatened to kill him, though he did not believe that her threats were serious. He denied that he had taken a stick with which to beat out the brains of the deceased. He said that he had bought a lot from the deceased, had made partial payments thereon, and that she had sued him for the unpaid balance. Notice of the suit had been served on him a short time before the homicide. According to his testimony, the deceased shot twice and he shot three or four times. The first shot was fired while they were in the house, and she then pursued him and continued to shoot.

Willie Crouchett, a brother of the appellant, testified that he heard one shot in the house and then another; that he saw the appellant coming out through the back door, followed by a woman, who appeared to be running.

Appellant introduced testimony to the effect that there were certain obstructions between the place where the homicide took place and that at which the state's witness Mary Crouchett claimed to have been at the time of the homicide.

There was testimony to the effect that the appellant's reputation as a peaceable, law-abiding citizen was good.

The court instructed the jury upon the law of murder, self-defense, and threats.

[1, 2] We find a bill of exceptions complaining that counsel for the state, in his closing argument, "referred to the acts and conduct of the appellant's wife immediately prior to and at the time of the homicide." The nature of the reference and whether being without the record is not revealed by the bill of exceptions, nor by the special charge which the appellant requested upon the subject. There was evidence touching the move-

'ments of the appellant's wife to the extent that the record reveals that her movements were a part of the res gestæ and were proved without objection. They were legitimately the subject of proper argument. Nothing appearing to show that they were improper, the complaint must be overruled.

[3, 4] There appears but one exception to the court's charge which this court is authorized to consider. It challenges in general terms the sufficiency of the court's charge upon the burden of proof as bearing upon the issue of self-defense, and in connection therewith complains of the refusal of a special charge in these words:

"The burden of proof is upon the state to show that the defendant did not kill the deceased, Loretta Babino, in self-defense."

The court instructed the jury upon the law of self-defense and reasonable doubt. The jury was told in one paragraph of the charge that it was essential that malice exist and that it be proved beyond a reasonable doubt in order to warrant the conviction of murder. In submitting the case to the jury for a finding, the court, in the eleventh paragraph of its charge, used this language:

"Now, bearing in mind the foregoing instructions of law, if, from the evidence in this case, you believe beyond a reasonable doubt that the defendant, Trazmond Crouchett, in the county of Jefferson, state of Texas, on or about the time and place alleged in the indictment, and not in defense of himself against an unlawful attack, real or apparent, reasonably producing a rational fear or expectation of death or serious bodily injury, and with intent to kill, did with malice aforethought unlawfully shoot and kill the said Loretta Babino," etc.

The court also gave a charge upon the presumption of innocence and the necessity of establishing guilt by legal evidence beyond a reasonable doubt. Viewing the charge as a whole, and taking into account the general nature of the exceptions to which these remarks were addressed, it is believed that no fault in the charge is revealed by the bill of exceptions which would warrant this court in ordering a reversal of the judgment. See article 743, C. C. P.; Vernon's Tex. Crim. Stat. 1916, vol. 2, p. 501.

[5, 6] Copied in the transcript are several requested charges which were refused. These related to the law of self-defense and threats, subjects which were treated in the main charge with considerable elaboration. Save in the particular manner to which we have adverted, there are no exceptions to the court's charge complaining of the manner in which the issues mentioned were submitted to the jury. To warrant a reversal because of the failure of the court to give a special instruction upon a subject which the court has attempted to cover in his main charge, it is required, as a general rule, that there be an exception addressed to the general charge in such timely manner as would give the court notice of the supposed defect in his charge to the end that it might be corrected, or, failing to except in the manner mentioned, it would be essential that the special charges presented be so framed as to specifically call for the court's attention to some omission or inaccuracy in the main charge. See Linder v. State, 94 Tex. Cr. R. 316, 250 S. W. 703; Parker v. State (Tex. Cr. App.) 261 S. W. 782. These rules are statutory as pointed out in the cases mentioned. Aside from the fact, however, that neither by exception nor by a specific special charge are the supposed faults in the main charge brought to the attention of the trial court, we are forbidden by statute to consider the refusal of the special charges in question, for the reason that the record is silent as to whether they were presented before the court's charge was read to the jury. The statute requires that a request for special charges must be presented before the main charge is read to the jury, and that, after the charge is read, no further instructions shall be given except under certain exceptions not involved in the present record, "and that all objections to the charge, and on account of refusal or modification of special charges, shall be made at the time of the trial." See C. C. P. arts. 737, 737a, 743. It has been uniformly held in construing these statutes that, as a predicate for the review of the failure to amend the charge or to give special charges, it is essential that the record show that the exception or the request was made before the main charge was read to the jury. See Denton v. State, 76 Tex. Cr. R. 58, 172 S. W. 796; Maddox v. State, 76 Tex. Cr. R. 217, 173 S. W. 1026; Jones v. State, 74 Tex. Cr. R. 205, 167 S. W. 1110; Vernon's Tex. Crim. Stat. vol. 2, p. 525, and authorities collated; also Medford v. State, 86 Tex. Cr. R. 237, 216 S. W. 175; Lowe v. State, 88 Tex. Cr. R. 316, 226 S. W. 674; Jones v. State, 89 Tex. Cr. R. 577, 232 S. W. 847; Middleton v. State, 86 Tex. Cr. R. 307, 217 S. W. 1046.

[7, 8] One of the grounds in the motion for new trial is the alleged newly discovered evidence of Lena Granger and Edna Coleman. Lena Granger was the daughter of the appellant. She resided a short distance from the scene of the tragedy and, according to the motion, she heard the shots, and before the homicide had heard the deceased threaten to kill the appellant. To excuse the failure to produce her testimony at the trial, it is alleged that she was sick following the homicide and continued in bed until the trial of the appellant, and that she had neither talked to the appellant nor his attorney. To authorize the granting of a motion for rehearing on account of newly discovered evidence, the law is strict in demanding that the

motion show diligence to discover the evidence. The mere fact that the accused was confined in jail is not a satisfactory reason for the failure to discover it. In the present case, the witness was the daughter of the appellant, was on friendly relations with him, and was near the place of the homicide at the time it occurred. Diligence would have suggested an inquiry touching the information that she might possess. See Vernon's Tex. Crim. Stat. vol. 2, p. 779, and authorities collated.

[9, 10] In his motion for new trial, appellant avers that Edna Coleman, in testifying, was "actuated by emotional excitement and fear brought about by subtle suggestions, if not actual threats, made by members of deceased's family, and was now cognizant of the probable consequences of her false testimony before the jury, but, having reflected thereon, she is not willing, as defendant is informed and believes, to testify only to such facts as are actually within her knowledge."

From the affidavit of Edna Coleman, attached to the motion, it appears that she was 19 years of age; that she testified in substance that at the time of the shooting she saw Trazmond Crouchett come out of Loretta Babino's house, following Loretta and shooting her. At the time of the shooting, the witness was at the window of her house, directly east of that of the appellant. This statement she claims in the affidavit was untrue; that, in fact, she was on the front gallery of the appellant's house, which faces in a direction opposite from that of the deceased, and that on the front gallery with the witness were Mary and Ernest Crouchett; that neither of the three was in a position to see what took place, and did not know what occurred until after the homicide. She said that she did not volunteer to testify, either before the grand jury or upon the trial, that she was summoned and was frightened. She said further:

"They told me I would have to pay a fine if I did not attend the trial, and I heard the colored people in the neighborhood say that any one who talked in favor of Trezmond Crouchett ought to be put in jail."

The part of Edna Coleman's affidavit going to impeach or contradict the state's witnesses Mary and Ernest Crouchett is upon a footing somewhat different from that phase of her affidavit retracting her former testimony. The former is not deemed within the law touching newly discovered evidence, for the reason that the record shows no sufficient diligence to discover the evidence before the trial concluded. Edna Coleman was subpœnaed, was present, and testified on the trial, and apparently before the grand jury. Her name is indorsed on the indictment as one of the witnesses for the state. The record is silent touching any effort to interview her at any time before the close of the trial. No reason is shown or perceived preventing the ascertainment from her, either before or during the trial, the same facts which, according to her affidavit, she afterwards revealed. It is the rule that only in exceptional instances will evidence which comes from a witness present at the trial be regarded as newly discovered. Fisher v. State, 30 Tex. App. 502, 18 S. W. 90; Powell v. State, 36 Tex. Cr. R. 377, 37 S. W. 322; Coffman v. State, 51 Tex. Cr. R. 478, 103 S. W. 1128; and other cases cited in Branch's Ann. Tex. P. C. § 204. When a witness, essential to the state, after the trial retracts his testimony, this court has, on various occasions, ordered a reversal. Green v. State, 94 Tex. Cr. R. 637, 252 S. W. 499, and cases cited; McConnell v. State, 82 Tex. Cr. R. 634, 200 S. W. 842; Hill v. State, 55 Tex. Cr. R. 435, 117 S. W. 134, 21 L. R. A. (N. S.) 878. When the retraction leaves ample evidence to show the guilt of the accused and warrant the punishment assessed, the court has frequently found the rule inapplicable. Young v. State, 7 Tex. App. 461; Jackson v. State, 18 Tex. App. 598.

[11] We have indulged in some discussion of the ground of the motion under consideration due to the serious nature of the case. The discussion might have been pretermitted, however, for the reason that neither by bill of exceptions nor statement of facts is the evidence brought before this court which was heard upon the motion for rehearing and upon which the trial judge based his decision in overruling the motion.

[12, 13] Upon this subject there seems to be some confusion in the minds of the bar for which it is possible that this court may not be altogether free from responsibility. However that may be, we deem it proper to bring forward the views of this court heretofore expressed upon the subject and the rules, so far as they are applicable to the present case, that are recognized as prevailing. Where a motion for new trial contains averments of facts aliunde the record, and attached to the record are affidavits supporting the averments, this court, upon reviewing the action of the trial court in overruling the motion, will consider the affidavits attached thereto, if there is nothing in the record which shows that the trial court heard other evidence upon the hearing of the motion for new trial. If, however, the record shows that the court heard other evidence, this court cannot review the order overruling the motion for new trial in the absence of the evidence which was furnished. The announcements to this effect are numerous, definite, and conclusive. See Reyes v. State, 81 Tex. Cr. R. 592, 196 S. W. 532, where many decisions are collated supporting the announcement there made. On the subject we refer to

the case of Lopez v. State, 84 Tex. Cr. R. 422, 208 S. W. 167, in which the misconduct of the jury was relied upon. The affidavit of a juror was attached to the motion. Speaking through Presiding Judge Davidson, the court said:

"In order to have this question reviewed, it is necessary that such evidence as was introduced should be perpetuated either in the statement of facts or a bill of exceptions reciting the facts, approved by the judge and filed during the term. We take the record as it is made as being correct. The affidavit of the juror is not evidence, unless it was introduced as such on the trial of the motion. Had the evidence been approved by the judge in a statement of facts or bill of exceptions and properly filed, it would have presented the question for revision. The affidavit attached to the motion is but a pleading which authorizes the introduction of supporting evidence. It is not evidence within itself, and, in order to constitute it evidence, it should have been introduced as such on trial of the motion and shown to have been so introduced in one of the ways specified. This has been the rule under the authorities and decisions of this court. Sharp v. State, 71 Tex. Cr. R. 633. A great many cases could be cited to the same effect, but we deem it unnecessary, but cite Reyes v. State, 81 Tex. Cr. R. 588, 196 S. W. 532, for a long list of such cases."

In practice, this rule is so modified as to permit the consideration of the motion with the affidavits attached, where the record is silent touching the hearing of evidence. This practice is due to the fact that the law permits the trial court to determine the issues of fact presented in the motion for new trial by affidavit or otherwise, and, when affidavits are attached to the motion and the record is silent as to the hearing of other evidence, on appeal the presumption is indulged that the court, in acting upon the motion, considered the affidavits. If, however, the record presents inferences against this presumption, it will not be indulged. When, therefore, as in the present case, the order of the court overruling the motion for new trial recites that evidence was heard, no presumption will be indulged that the affidavits attached to the motion were considered or that they were alone considered. This presumption cannot be, for the reason that in the absence of a contrary showing by the record this court must presume that the trial judge was correct in overruling the motion for new trial, and that in doing so he acted upon evidence which supported and justified his action.

In exceptional cases, as where the death penalty is assessed or where from the record it appears that a manifest injustice would otherwise result, the rule has been relaxed. See Collins v. State, 95 Tex. Cr. R. 405, 254 S. W. 805. As illustrative of the practice in recent cases, see Hickox v. State, 95 Tex. Cr. R. 173, 253 S. W. 828; Cade v. State, 96 Tex. Cr. R. 523, 258 S. W. 486; McKinzie v. State, 97 Tex. Cr. R. 82, 260 S. W. 585; Rumfield v. State (Tex. Cr. App.) 265 S. W. 153; Harcrow v. State, 97 Tex. Cr. R. 274, 261 S. W. 1046; Hicks v. State, 97 Tex. Cr. R. 373, 261 S. W. 580; Hughey v. State (Tex. Cr. App.) 265 S. W. 1047.

[14] The evidence is not wanting in cogency, and nothing has been perceived in the record which, in the opinion of this court, would authorize a reversal of the judgment. It is therefore affirmed.