Anaceto Rios v. The State.

No. 11620.   Delivered May 9, 1928.

Rehearing denied June 20, 1928.

The opinion states the case.

*Schleyer & Triesch* and *Adolph Seidemann,* for appellant.

*A. A. Dawson* of Canton, State's Attorney for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment confinement in the penitentiary for life.

Virgil Cox was shot and killed in Comal county near the town of Hunter on the night of March 12th, 1927. His body was discovered on the morning of March 13th, 1927, in a lane that leads from the Post road to the old New Braunfels-Grune road, near which appellant lived. The body of deceased was found on some bedding covered with quilts about twenty-five yards from a Ford touring car. A 32-calibre discharged pistol shell was found on the ground nearby. Another empty shell of the same size was found on the running board of the car. Deceased was shot in the head, the bullet having entered from the front. The automobile found in the vicinity of deceased's body was headed in the direction of the Post road which runs from San Antonio to Austin. The officers who discovered the car had some difficulty in cranking it. The ignition switch was on at the time of the discovery of the car. A necktie which was identified by the father of deceased and another witness as belonging to deceased was found in appellant's possession shortly after the homicide. Appellant confessed that he killed deceased. Omitting the formal parts, one of his confessions read as follows:

"My name is Anacito Rios, I live near Hunter in Comal County. On Saturday night March 12th, 1927, myself and my younger brother Doratio Rios went to the dance at Sebastian Ramirez which was about a mile and a half north west of the post road and across the railroad from the post road. We walked and went about 9

o'clock to the dance. As we went to the dance, near the dance we saw two negroes. About eleven o'clock my brother Doratio Rios, myself, Pedro Luna, Eusebio Montevayo, Pancho Chicote and Eulalio Montevayo all left the dance together and went towards our house. I live on the South East side of the Post Road on the right hand side going toward Austin from New Braunfels. We walked in the turning row through the field and we were going in the direction of the post road and towards my house. We all five walked together about a half a mile and Pedro Luna, Eusebio Montevayo and Pancho Chicote then went west towards their house, they going down a turning row. My brother and myself then turned east and got into the road which leads to the post road, and we then walked in the road towards the post road and when we reached a point near the post road we saw a man asleep in a Ford touring car with a trunk in the back of the car. The man was on the front seat of the car and was sitting up asleep. The car was headed towards the post road. The man had his clothes on. I saw that he was asleep and I decided to shoot him and rob him and get his money and I told my brother that I was going to shoot him, and my brother said no don't do it and he kept going on towards home and I told him to wait and he wouldn't do it and he went on. I then stood by the car and shot the man. The man merely threw up his hand and groaned. He said nothing. The gun was a 32 pistol. I took the two shells out of the gun and dropped them there somewhere. I then took all the money the man had out of his pocket and his neck tie was in the car and I took it. I got six dollars in money and a neck tie. I then took his body out of the car and made his bed down by the side of the car and put the dead man on his bed by the car. I then cranked the car and started towards the post road with the car and I drove about sixty feet and the car went dead and I couldn't start it any more. I then left and went towards my home. I lost my pistol on the way home. I got home about two o'clock Sunday morning and about 8 o'clock Sunday morning I caught the bus and paid him twenty five cents and came to New Braunfels and went to a fruit stand and grocery stand and bought some sweet cakes and chocolate candy and cheese and cigarettes, and then eat them at Pfeuffer's lot or yard. I saw Pancho Trejo and we went to the picture show after dinner. Late Sunday evening I went on the bus to my home. The pistol I shot the man with was a 32 pistol I bought in San Antonio about September 1926 from Antonio Flores. On the day of the killing I went to Green's store and bought some

cartridges. They were 32 in size and I bought twenty-five cents worth. Antonio Samora was at the store but he did not go in with me. I bought the cartridges from Mr. Kellerman. Mr. W. S. Lloyd took me home from Green's store in the afternoon. I came back to New Braunfels on Monday and Tuesday after the killing and spent the rest of the money eating and smoking. I bought two handkerchiefs from Eiband's store. The necktie that I turned over to the officers is the necktie I got from the dead man. This is the truth and the whole truth and I make this statement voluntarily and this statement has been read over to me before signing and is true and correct."

Bill of exception Number 4, as qualified by the court, presents the following occurrence: After his arrest appellant told the sheriff and other officers that he had taken a necktie from deceased and that said tie was in his home. The sheriff went with appellant to his home and there found the necktie which was delivered to him by appellant. The necktie was identified on the trial by two state's witnesses as belonging to deceased. The sheriff was permitted to testify over appellant's objection that appellant had stated to him that he had taken the necktie from deceased after he had killed him. It was and is appellant's contention that, inasmuch as the body of deceased had already been discovered, appellant's statement in connection with the delivery of the necktie to the sheriff embodied no fact or circumstance found to be true which conduced to establish his guilt. It is the announcement of the decisions that the oral or written confession of the accused is admissible in evidence whether he be in custody or not, or be warned or not, if in connection with his confession, he make statements of facts or circumstances which are found to be true, which conduce to establish his guilt, such as the finding of secreted or stolen property or the instrument with which he states the offense was committed. Branch's Annotated Penal Code, Section 63, page 37, and authorities cited; Turner v. State, 136 S. W. 487. While the body of the deceased had been found and the fact that he had come to his death by violence had been established, there is nothing in the bill to show that prior to the statements of deceased the sheriff knew of the whereabouts of the necktie. The bill showing a discovery of part of the fruits of the crime by reason of a statement by appellant found to be true and which conduced to establish his guilt, it was immaterial whether appellant was in custody or not or was warned or not when he made the statement.

The sheriff having testified to finding the necktie in the possession of appellant and state's witnesses having identified said tie as belonging to deceased, there was no error in permitting its introduction in evidence. It follows that appellant's bill of exception Number 5, wherein complaint of the action of the trial court in permitting the state to introduce the tie in evidence is made, shows no error.

It appears from bill of exception Number 6, that appellant made three written confessions, two of which were introduced in evidence by the state. Before resting the case, the district attorney delivered the third confession to appellant's counsel and advised him that he had no objection to its introduction in evidence if appellant desired to offer it. We see no reversible error in the action of the court in refusing, in the first instance, to require the district attorney to deliver said confession to appellant's counsel.

At the time appellant's confession was taken an interpreter was used. Among other things appellant objected to the introduction of the confession on the ground that the interpreter was not sworn at the time appellant made the confession. The interpreter was properly sworn on the trial of the case and testified that he correctly interpreted the statements of appellant at the time the confession was taken. We know of no statute requiring the interpreter to be sworn under the conditions stated in appellant's bill. Nor has appellant cited any decisions announcing the rule he contends for. This court held in Rueda v. State, 277 S. W. 117, adversely to appellant's contention.

While the sheriff was testifying as a witness for the state, as shown by bill of exception No. 9, he was asked by the district attorney why he went to the jail for the purpose of securing the confession from appellant which had been offered in evidence. Over the objection of appellant that the statement made at the time by him to the sheriff had not been reduced to writing after proper warning as provided by statute, he being under arrest, the court permitted the sheriff to testify that appellant stated to him that he wanted to make a correction in his first confession in order that one Ybarro who was in jail might be exonerated from complicity in the crime; that Ybarro had nothing to do with the commission of the offense and that he, appellant, shot deceased. Upon the trial appellant denied any connection with the homicide and declared that he had been coerced to make confessions which did not speak the truth. The officers, among them being the sheriff, denied that appellant had been coerced. While giving his version of matters oc-

curring at the jail, the sheriff testified as hereinbefore stated. Appellant opened up an investigation of what occurred in the jail at the time he made the confession, and offered a witness who testified to facts tending to show that he had been coerced into making the confession. Moreover, this witness testified, without objection, that he heard appellant admit to the officers, under persuasion, that he killed deceased. Identically the same statements are contained in the written confession. Also appellant made in effect the same statement when the necktie hereinbefore referred to was discovered by the officers. If the matter complained of was error, under the circumstances the ordering of a reversal would not be justified. Johnson v. State, 1 S. W. (2d Edition) 896.

On cross-examination, as shown by bill of exception Number 25, appellant was asked by the district attorney if he hadn't taken the officers to a place where he said he had laid the dead man on the ground, and if blood was not there at the time. Appellant objected to the question on the ground that he was under arrest and the statute relating to confessions had not been complied with. The distrist attorney then stated to the court in the presence and hearing of the jury: "The court understands we are offering this for the reason that Mr. Seidemann has offered statements that he has made while under arrest. Mr. Seidemann has proved by a negro boy here that the defendant told him in jail that he did not do the killing. Now, then, if that testimony was admissible, what he said to the negro while he was under arrest, certainly what he said to the officers while he was under arrest, when he took us and lead us to the spot where he said 'he laid the dead body,' and there was blood there, would be admissible." The foregoing statement made in the presence of the jury by the district attorney was objected to by appellant on the ground that it was assumed therein that he, appellant, had told the district attorney and officers that he had laid the dead man on the ground and was, in effect, testimony by the district attorney to facts which were not admissible, inasmuch as the statute governing confessions while under arrest had not been complied with. The bill fails to show that appellant answered the question. Appellant in his written confession detailed the manner in which he killed and robbed deceased. Other witnesses testified to the facts that deceased was found a short distance from his automobile lying on some bedding which was covered with blood. When the tie referred to was recovered appellant admitted that he killed deceased. A witness testified, without objection, that he heard appellant admit to officers

that he killed deceased. Without going into an extended discussion of the matter, it is only necessary to state that our discussion of bill of exception Number 9 is applicable here, and that under the circumstances a reversal because of the error complained of would not be warranted.

During his opening argument the district attorney stated to the jury:

"That the negro has lied, we will show to the next grand jury."

Upon objection the court immediately instructed the jury not to consider the statement. The bill of exception fails to show who the witness was that the district attorney referred to; fails to show whether he was a witness for the state or appellant; and fails to show whether he testified to facts material to appellant's defense. It is manifestly impossible to determine from the recitals in the bill whether reversible error is present.

Appellant offered certain testimony which was objected to by the district attorney in connection with a remark by him in the presence of the jury as follows:

"How would that enlighten the jury as to whether or not he was justified in killing this man."

Upon objection by appellant, the jury were promptly instructed by the court not to consider the remark. Appellant contends that the remark was obviously of the nature to prejudice his rights and that the act of withdrawal could not cure the injury. We are unable to agree with his contention. In the light of the evidence, we are constrained to hold that reversible error is not manifested.

Appellant alleged in his motion for a new trial that material evidence beneficial to him had been suppressed by the state, and that he had not discovered such fact until his attorney was preparing his motion for a new trial. The motion is supported by the affidavit of appellant's attorney. The state controverted the motion. The order of the court overruling the motion for a new trial states that evidence was heard thereon. No statement of facts or bill of exception preserving the evidence heard on the motion is brought forward for review. Where the order recites that the court heard evidence on the issue, this court must presume that the court's action in overruling the motion was correct and that the trial court acted on evidence that was sufficient to justify his action. Sykes v. State, 2 S. W. (2d Edition) 863; Crouchett v. State, 271 S.W. 99; Hughey v. State, 265 S. W. 1047. Applying this rule to the instant case,

we must presume that the court's action in overruling the motion for a new trial was correct.

·The record contains 29 bills of exception. We have not undertaken to discuss each bill in detail. However, we have examined all of appellant's contentions and fail to find reversible error.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant's motion for rehearing is predicated largely upon the insistence that we were in error in disposing of the question raised by bill of exception number nine. As we understand the record the matter therein complained of arose in the following manner. After making the preliminary proof the state put in evidence a written confession of appellant of date April 10th, 1927, in which appellant said that he killed deceased by shooting him with a 32 caliber pistol; took $6 in money from the dead man's pocket and also took his necktie out of the car. In this confession appellant implicated no one but himself. At the time such confession was made the authorities were holding in jail one Ybarro who was supposed to have been connected with the killing. The sheriff was cross-examined at length by appellant as to another confession which had been taken soon after the killing but which at the time of the examination of this witness had not been placed in evidence by the state, and the sheriff was also questioned as to whether he went to the jail to secure the second confession. On redirect examination in response to the question why he (the sheriff) went to the jail for the purpose of securing the second confession—being the one already in evidence,—the sheriff said it was because appellant wanted to correct his first confession in which he had implicated Ybarro, saying the latter had nothing to do with the killing. Later in the trial the first confession which was taken on March 12th, 1927 was placed in evidence by the state, wherein appellant claimed that Ybarro was present when appellant shot deceased, and aided appellant in taking the body from the car and was a party to taking deceased's property. The sheriff had also testified that prior to making any written confessions appellant had stated to the officers that he had a tie which was taken from the dead man and had gone with the officers to appellant's house and there secured and delivered to

the officers the necktie which was identified as belonging to deceased 'and which was introduced in evidence. Under all the circumstances appearing in the record and in view of the two confessions which were introduced we feel constrained to adhere to our original holding that a reversal could not properly be predicated upon the incident complained of in bill of exception number nine. Johnson's case, 1 S. W. (2d) 896 presents a case very similar upon the facts.

The other matters urged in appellant's motion have been carefully considered and we are not lead to believe therefrom that our original opinion was erroneous in the particulars complained of.

The motion for rehearing is overruled.

*Overruled.*