### B. F. JOHNSON V. THE STATE.

No. 3610.   Decided June 19, 1907.

**Theft From the Person—Motion for new Trial—Newly Discovered Evidence.**

Where upon motion for new trial after conviction for theft from the person, it was shown by the affidavit of a disinterested witness that the spots of identification upon the alleged stolen paper money were placed there after the alleged theft, and such marks of identification had been used as strong circumstances against the defendant during the trial; and it was made clear that these matters were not known to the defense at the time of the trial, the motion should have been granted.

Appeal from the District Court of Taylor. Tried below before the Hon. J. H. Calhoun.

Appeal from a conviction of theft from the person; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Wagstaff & Davidson,* for appellant.—On question of newly discovered evidence: West v. State, 2 Texas Crim. App., 213; Fisher v. State, 30 Texas Crim. App., 509; Wilson v. State, 21 S. W. Rep., 361.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—The State admits that a new trial should have been granted on newly discovered testimony mentioned in the motion for a new trial. We agree that the Assistant Attorney-General is correct in this statement or admission. Perhaps it might be necessary to state some of the facts in this connection to show the reason why this is correct. Appellant was the owner or proprietor of a wagon yard at Merkel station on the Texas & Pacific Railway about seventeen miles west of the town of Abilene. Abernathy, from whose person the money is alleged to have been taken, was at appellant's yard sometime in the morning, and on the trial testified that he had somewhere between $115 and $120 in a pocketbook in his pocket, $110 of which he said was taken from his person; five of the bills contained in the pocketbook were of the denomination of $20, one $10 and one $5, and some change in silver. The five dollar bill and the change in silver were not taken from the pocketbook. The case is one exceedingly close on the testimony, even if it should be conceded that the State had made out a case, but the testimony places quite a number of people in and around the wagon yard, and where it is claimed appellant was sleeping at the time the money was taken. Abernathy was drunk; he admits to being stupidly drunk, but leaves the inference that something had been given him in the whisky that put him to sleep. Some of the other witnesses who testified in regard to this do not agree with this statement. It is not contended that appellant furnished the whisky to Abernathy; he was drinking at the time he went to appellant's wagon yard, and in fact he admits that he drank considerably; that he had shipped in through the express company whisky at different times to Merkel, that immediate section being under the operation of the local option law; that on the morning his money was taken he was drinking; that he was drinking when he went to appellant's wagon yard, and the evidence shows while there he took one or more drinks. According to the evidence he took several drinks after reaching the wagon yard, and one of the witnesses testified that he was so drunk that one of the hands working in the wagon yard had to take him and put him to bed. The theory of the State was that after Abernathy was placed in bed, that appellant laid down by him, and threw his hand over him. This

is the only testimony, as we understand the record, tending to show that appellant was about Abernathy while he was on the bed. There is other testimony showing that another party was seen standing by the bedside where Abernathy was sleeping, and the witness further stated that this party was seen pushing a pocketbook back into Abernathy's pocket. There is testimony of appellant's inability, by reason of his absence from the yard, to have taken the money. There were witnesses introduced in appellant's own behalf, the strongest witness perhaps on this line being his wife, who testified that he was at home from nine thirty in the morning until in the neighborhood of four o'clock waiting upon herself and the children who were all quite sick with the measles. She was supported by other testimony.

The next fact relied upon by the State, and as most material testimony against appellant, was that on the Saturday after the theft should have occurred on Thursday, he changed or secured change of a twenty dollar gold certificate from Mr. Brown, the agent of the Pacific Express Company, in the town of Merkel. The witness Abernathy stated that there were three of the bills that he could identify, two gold certificates and one silver certificate; he identified two of them before the jury, and practically the third one, which he called a silver certificate, which proved, however, to be a national bank note of Hico National Bank. This was so clearly shown not to have been his property that it may not be considered in the case at all, except for the fact that it bore upon Abernathy's accuracy in identifying the money. It is useless to undertake here to go into the testimony, which along this line was shown to be unreliable. One of the $20 gold certificates identified by Abernathy was by means of the fact that it had two small holes near the center of the bill, which he says had been worn there by reason of the peculiar manner of folding the bill while it was in his pocketbook with the other four $20 bills. As we understand his testimony, this was the only means of identifying this bill. The remaining $20 bill was identified by means of some ink stains, or what Abernathy, the witness, supposed to be ink stains, upon the back of the $20 bill not a great ways from its center. This became, as we understand the record, perhaps the most pungent fact in the case, for with a want of identification of these bills the State had practically no case, and the strength of the case largely hung upon the identification of this particular gold certificate. Mr. Weir, a deputy sheriff, secured this gold certificate from Mr. Brown, the express agent, and it was produced upon the trial. Mr. Brown was used as a witness, and testified to securing this bill from appellant on Saturday, giving in return therefor some change. It seems that it had been the custom of appellant, in running his wagon yard business, to secure change from Mr. Brown at the express office; in fact, at one time Brown's office was in one end of the building occupied or used by appellant as his office for his wagon yard. Brown did not hear the testimony of Abernathy upon the trial. During the argument, sitting in the court room,

Brown heard the attorneys discussing these supposed ink stains or marks on the back of the gold certificate, and being thus called to his attention, he informed some one in the court room of the fact that there was some mistake about this identification, for he had placed those marks upon the bill after the bill came into his possession as a means of identifying it, and perhaps at the request of Mr. Weir, the deputy sheriff. While the jury was out considering their verdict, the statements of Brown were brought to the attention of appellant's attorney, who immediately requested the court to permit him to bring the jury back, and send for Brown and produce his testimony in this respect. The court states that he refused this as Mr. Brown had gone home to Merkel, seventeen miles away, but he further states that if he had been present he would not have permitted it. One of the grounds of the motion for a new trial is based upon this newly discovered evidence of Mr. Brown. Brown's affidavit is taken sustaining these statements, and he testified also on motion for a new trial. He states he has no interest in the case; knew nothing about it, but that he did not think it was right that that sort of testimony should be used to convict a man when he had himself placed these marks upon the bill by which it was identified, subsequent to the time that it had come into his possession, which was two days or more after Abernathy had lost the bill, if this bill was Abernathy's; at least it was two days or more subsequent to the alleged theft of the money from Abernathy. We think Mr. Brown makes a very clear statement of a rule of justice and right. It is made clear to appear that these matters were not known to the attorneys until after the retirement of the jury after the conclusion of the case, and while the jury were considering their verdict. It is shown that these spots of identification were used as a strong circumstance against appellant during the trial. The bill was passed around among the jury, as we understand the motion for a new trial. As this matter is presented, we are of opinion that the motion for a new trial should have been granted so that a jury may have the testimony of Mr. Brown in considering their verdict.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*