ARMANDO LOPEZ v. STATE

No. 27,491. April 6, 1955
Rehearing Denied June 1, 1955

*Pope & Pope,* by *Bismark Pope,* Laredo, for appellant.

*E. James Kazen,* District Attorney, Laredo, and *Leon Douglas,* State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

The offense is murder; the punishment, 20 years.

The statement of facts consists of 226 pages, and we have been favored with briefs by the state and by the appellant totalling 171 pages. We think the issue presented can be properly stated as follows:

The appellant's confession, the voluntary nature of which is not questioned, omitting the formal parts, reads as follows:

"My name is Armando Lopez. I live in Zapata, Texas. On Sunday, April 25, 1954, I went to a dance in Zapata, Texas with Alfredo Rosas, Eduardo Rosas, Adan Lopez and Oscar Lopez. When the dance broke up about midnight, the 5 of us got into my car and we drove by the house of Maria Pura Meza, a girl that I go with. Near her house, a truck pulled over in front of my car and I stopped. Driving the truck was Leonel Presas and in it besides him were his wife and her sister, who is Maria Pura Meza. Presas got out of the truck, walked over to my car, opened the front door and grabbed me by the shirt, tearing my shirt. I got a knife from the glove compartment of the car and cut him in the stomack.

"Armando R. Lopez"

The appellant was 29, and the deceased was 34 years of age.

The deceased met his death as the result of a stab wound in the heart and one in the abdomen inflicted by the appellant, who used a knife over nine inches long.

We quote in part from the appellant's testimony in his own behalf.

"Q. Presas (the deceased) was considerably shorter than you? A. A little bit.

"Q. How much? A. About two or three inches.

\* \* \* \*

"Q. You felt that you and Presas were pretty evenly matched? A. Yes, sir.

\* \* \* \*

"Q. So then, in other words, he was blowhard, one day he would blow hard and next day he would come around you and everything was patched up, is that right? A. That was the way he was.

\* \* \* \*

"Q. Just when did you take this knife out of the glove compartment? A. When Leonel was getting off his truck.

\* \* \* \*

"Q. You testified that in the other encounters - - - A. I never did see any arms on him.

"Q. And you didn't see any arms on him that night? A. No.

\* \* \* \*

"Q. He didn't come at you with any knife in his hand? A. I didn't see anything.

"Q. And from your previous encounters you could assume that he had nothing because he had not pulled anything out in previous encounters did he? A. No, he never pulled anything.

\* \* \* \*

"Q. But when he came towards you he didn't have anything? A. I didn't see nothing.

\* \* \* \*

"Q. What happened after you got to the ground, what did he do? A. Just as soon as I got to the ground he swung his arm around my neck and had me in a head lock.

\* \* \* \*

"Q. After he had you on the ground with his arm around your neck was that his right, was it? A. Yes, sir.

"Q. What was he doing with his left hand? A. He was hitting me on the face.

\* \* \* \*

"Q. What did you fear would happen? A. I though he was going to break my neck and choke me to death, I couldn't breathe.

"Q. What did you do then? A. I got my knife out of my pocket, tried to open it, I had some difficulty trying to open the knife and he jerked me and it would close again, several times, until I got it open.

"Q. Why did you want to open that knife? A. To defend myself, I wanted to get away from him."

The jury found against the appellant's claim of self-defense, and we think that the jury were authorized from the confession and the above testimony to conclude that the appellant was not in fear of death or serious bodily injury at the hands of the deceased, who was "evenly matched" with him and was unarmed.

The sole question presented for review is the failure of the trial court to grant a motion for new trial based upon retracted evidence and newly discovered evidence.

We shall discuss each in turn.

Mrs. Presas, the wife of the deceased, did not testify at the hearing on motion for new trial, but an affidavit executed by her was introduced in evidence. In it she swore that she had testified falsely as to the following facts:

1. At the trial she testified that the appellant's automobile stopped first in front of the deceased's truck and that the deceased had to bring his truck to a stop in order to avoid hitting it. In the affidavidt she says, "This is not exactly correct. When they came to a stop, the two cars were nearly even on the high-way, with the car of Lopez to the left or west of the truck of my husband. The truck of my husband was some what at an angle, partly in front of the Lopez car."

From the testimony of the appellant shown above and the other facts in the case, we are at a loss to see how the positions of the truck and automobile prior to the homicide could have been a controlling factor in the case. The real issue, as we see it, was whether or not the appellant was defending himself against death or serious bodily injury at the time he stabbed the deceased. The jury found that he was not, and we do not feel that the statement in the affidavit quoted above would have changed their verdict.

2. At the trial she testified that the deceased had nothing in his hand when he left the truck, and in the affidavit she said "and the truth is that he did have this bottle in his hand when he dismounted from the truck. Whether he threw it away after dismounting I do not know, but I do know, that he was angry when he left the truck and that he did have the bottle in his hand."

Since the appellant testified on several occasions that the deceased had no bottle in his hand when he came to the appellant's automobile, we fail to see how such change in her testimony could have affected the verdict in any way.

3. At the trial Calixto Presas, Jr., a 13-year old boy, testified that he overheard the appellant say, as he left the dance hall prior to the difficulty with the deceased, that he was going to beat up the deceased. The affidavit of Mrs. Presas recites that prior to the trial she had talked to Calixto and that he had told her he was going to testify as he did testify because his aunt had asked him to do so but that the testimony which he intended to give would not be true. This affidavit of Mrs. Presas, standing alone, cannot constitute a retraction of Calixto's testimony. At most, it went to the weight to be given his testimony.

As to newly discovered evidence, we find the following:

1. An affidavit of Juan and Josefa Meza, the father and mother of Mrs. Presas, in which they state that their son-in-law (the deceased) was a very violent man and often whipped their daughter. The affidavit continues, "We did not make the facts known by us to the defendant or his counsel and avoided talking to any of them because of our relationship to the parties in the case and because we wished to avoid doing anything to hurt either of our daughters and further because we did not know that our daughter Armandina (Mrs. Presas) would deny the fact of the violent nature of her husband and his treatment of her."

2. An affidavit of Angelica Meza, the sister of Mrs. Presas, in which she states that she heard a disturbance and went out in the street where the people were, observed the position of the automobile and truck, and later the next morning found certain buttons on the ground which she presumed had come from the appellant's shirt. She did not claim to have witnessed the homicide. The affidavit continues, "I had never before made the facts known by me to the defendant or his counsel believing

that my sister Armandina would testify to the truth. As I was a sister of both the widow of the deceased and the wife of the defendant I did not like to make my testimony known to the defendant and when persons tried to approach me to determine if I knew anything to which I could testify in the case I refused to talk to them because of my relationship to the parties, and for this reason my testimony was not available."

In his motion for new trial, the appellant alleges as to Mr. and Mrs. Meza the following: "Defendant alleges that because of their relationship to the wife of the deceased he did not approach them and he did not have knowledge prior to the trial that they knew of the mis-treatment inflicted upon their daughter by the deceased and of his violent character toward her and others; and because of their relationship to deceased they were considered adverse and hostile to him."

As to Angelica, we find the following: "That the said Angelica Meza is a sister of Armandina Meza de Presas and said Angelica Meza testified as a state's witness in the examining trial and was adverse and hostile to defendant and it was believed by defendant and his counsel that she would not change her testimony in any particular, having testified under oath at the examining trial."

We need not pass upon the question of diligence because we conclude that the evidence outlined above would not have changed the result had the same been introduced in the trial.

In Pilkington v. State, 119 Texas Cr. Rep. 308, 43 S.W. 2d 942; Garcia v. State, 121 Texas Cr. Rep. 317, 51 S.W. 2d 719; Gulley v. State, 130 Texas Cr. Rep. 335, 94 S.W. 2d 461; Johnson v. State, 51 Texas Cr. Rep. 605, 103 S.W. 893; Estrada v. State, 29 Texas App. 169, 15 S.W. 644; and Henson v. State, 150 Texas Cr. Rep. 344, 200 S.W. 2d 1007, relied upon by the appellant, the newly discovered evidence was to a material fact which this court concluded would have produced a result more favorable to the appellant had it been presented to the jury.

We cannot bring ourselves to such a conclusion here.

The finding of the buttons in the street could have added nothing to the case. It was undisputed that the homicide took place in the street, that the deceased got out of his truck, went over to the appellant's automobile, took hold of him, and that following this the deceased was stabbed by the appellant.

The location of the automobile and the truck at the scene of the homicide could only shed light on who caused who to stop. In this connection, it should be noted that two state's witnesses testified that the deceased forced the appellant's automobile to come to a halt by driving his truck in front of them.

The fact that the deceased often whipped his wife is not nearly as compelling proof of the violence of his nature as other evidence which we find in the record.

Mrs. Presas admitted that she had filed a complaint against her husband charging him with an aggravated assault.

Sheriff Leopoldo Martinez of Zapata County, where the deceased lived, testified that his reputation as being a peaceable and law-abiding citizen was bad, that he had arrested him several times for fighting, that the deceased was regularly in trouble, that he had him in jail once for trying to burn his home, and arrested him once for beating his wife.

Zapata County Judge M. B. Bravo testified that the deceased's reputation as being a peaceable, law-abiding citizen was bad.

Roy Rash testified that on one occasion the deceased, without any provocation, tried to pick a fight with him.

District and County Clerk Cuellar testified that on one occasion deceased's wife filed a complaint with him charging the deceased with committing an aggravated assault upon her.

Justice of the Peace Cuellar testified that the records of his office showed that complaints had been filed against the deceased for fighting in a public place and threatening to take the life of a human being.

The deceased's sister-in-law and daughter of Mr. and Mrs. Meza testified that deceased's wife had on one occasion showed her bruises which she said the deceased had inflicted.

Certainly we think the testimony of Mr. and Mrs. Meza would be cumulative of the above.

The judgment of the trial court is affirmed.

ON MOTION FOR REHEARING

BELCHER, Judge.

Appellant again urges that the trial court erred in refusing to grant his motion for a new trial based upon the facts stated in Mrs. Presas's affidavit and those in the affidavit of Angelica Meza introduced on the hearing of said motion, because such facts are material to appellant's defensive theory and would probably cause a different result on another trial.

We have carefully reviewed the record in the light of appellant's motion and are constrained to hold that it does not appear therefrom that the trial court abused his discretion in overruling said motion for a new trial.

Opinion approved by the Court.